**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-51300

_____


JOSE A. SOLEDAD,

                                        Plaintiff-Appellant,

versus

UNITED STATES DEPARTMENT OF TREASURY,
Robert E. Rubin, Secretary of the Department of Treasury

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas, El Paso Division

_____

September 12, 2002

Before STEWART and CLEMENT, Circuit Judges[*].

EDITH BROWN CLEMENT, Circuit Judge:

Jose Soledad appeals the grant of judgment as a matter of law in favor of the United States Department of Treasury on his Rehabilitation Act disability discrimination claim and hostile work environment claim. The district court set aside a jury verdict in favor of Soledad after it found that it improperly instructed the jury that the Treasury Department was liable if it discriminated "because of" Soledad's disability, rather than "solely because of"

---

[*] Judge Politz was a member of the panel that heard oral arguments. However, due to his death on May 25, 2002, he did not participate in this decision. This case is being decided by a quorum pursuant to 28 U.S.C. § 46(d) (1996).

the disability. The "because of" form of the jury instruction was proper under the Americans with Disabilities Act, (ADA), but the district court held that it was improper for a Rehabilitation Act claim. It further held that Soledad did not meet the required highetened burden of causation and granted judgment as a matter of law. Soledad challenges both whether the court applied the right level of causation, and whether even if the "solely because of" causation applied Soledad met that level of causation. Soledad also appeals the district court's earlier grant of summary judgment in favor of the Treasury Department dismissing Soledad's three Title VII claims for retaliation for engaging in protected activity. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Proceedings

Soledad contends that Gurdit Dhillon ("Dhillon"), district director of the El Paso ports of entry, retaliated against him because he supported the claims of his coworker, Marjorie Gutierrez, against Dhillon for sexual harassment.[1] Dhillon allegedly retaliated by starting a campaign to demote Soledad such that he was transferred to passenger operations in March 1996 when he had been performing B-35 reports. While Soledad describes this action as a significant step down on the Customs Service ladder, it did not involve a different level of pay.

---

[1] Soledad agreed to testify in support of Gutierrez's claim.

2

On June 4, 1996, Soledad and several customs inspectors filed a class action claiming Title VII discrimination and retaliation by Dhillon. When class certification was denied, Soledad indicated he would continue to pursue his EEO claims. On March 4, 1998, he filed a second complaint with the Department of Treasury's EEO office alleging national origin discrimination and retaliation, and later added a claim of disability discrimination.

Soledad alleged that his health had deteriorated under the stress of negative comments made daily by Dhillon. He filed a worker's compensation claim on April 4, 1997, and began seeing a psychiatrist, Dr. Ben Passmore, in October 1997 because of the severe emotional distress.[2] Dr. Passmore diagnosed him as suffering from major depression with Post-Traumatic Stress Syndrome features. Dr. Feldman had already recommended that Soledad restrict his work schedule to the day shift with no overtime work. This alleged disability then set the stage for Soledad's Rehabilitation Act claim.

Soledad's supervisor at the time, Frank Fuentes, told Soledad that he did not believe Soledad was disabled. He made derogatory comments to Soledad about his diagnosis and work recommendations and told other workers that they would have to work more overtime because of Soledad. Soledad claims that Fuentes made it difficult

___

[2] Soledad had been seeing a psychologist, Dr. Gary Feldman, since October 1996 due to the emotional distress he was experiencing.

for him to attend therapy sessions and refused to schedule him for holidays when Soledad would have received overtime pay. On September 12, 1997, Fuentes sent Soledad a letter indicating he would be terminated because the doctor's orders were incompatible with the requirements of the job. Soledad's doctor then removed his previous restrictions on work, and Soledad did not lose his job. Soledad alleged that the above facts demonstrate that Fuentes discriminated against him because of his depression.

## II. Discussion

### A. Standard of Review

We review whether the district court was correct in granting the Rule 50 motion for judgment as a matter of law because it improperly instructed the jury as to the causation standard for a Rehabilitation Act claim. *See* Fed.R.Civ.P. 50. We review the grant of a motion for judgment as a matter of law for the legal sufficiency of the evidence[3] and must consider "all the evidence with all reasonable inferences in the light most favorable to the party opposing the motion." Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 950 (5th Cir. 1994). The district court's decision to grant the Rule 50 motion should be sustained only "when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict." London v. MAC Corp. of Am., 44 F.3d 316, 318 (5th Cir. 1995). We

---

[3] Hiltgen v. Sumrall, 47 F.3d 695, 699 (5th Cir. 1995).

4

must therefore uphold the jury verdict if, "based upon the record . . . the challenged instruction could not have affected the outcome of the case." Bender v. Brumley, 1 F.3d 271, 276-77 (5th Cir. 1993) (citations omitted). We may reverse based on a faulty jury charge only where "the charge as a whole leaves us with substantial and ineradicable doubt the jury has been properly guided in its deliberations." Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 214 (5th Cir. 1991) (citations omitted). Finally, we note that the primary question is one of statutory construction which we review de novo. See Lara v. Cinemark USA, Inc., 207 F.3d 783, 786 (5th Cir. 2000).

B.  Jury Charge

Soledad maintains that the district court properly instructed the jury and erred by reversing itself in granting the Rule 50 motion. The jury instructions at issue included:

> For the Plaintiff, Jose A. Soledad, to establish a claim of intentional discrimination by the United States Customs Service, the law requires that the Plaintiff prove by a preponderance of the evidence that
> . . .
> THIRD:    His disability was **a motivating factor** in Defendant's treatment of the plaintiff.
> . . .
> Question One
>     Did the Defendant, . . ., intentionally discriminate against Jose Soledad **because of** his disability . . . ?
> Question Two
>     Did the Defendants, . . ., subject Jose A. Soledad to an unwelcome harassment **because of** his disability . . . ?

In 1992 Congress amended the Rehabilitation Act and included

5

at § 794(d) a provision that explicitly incorporates the ADA's standards governing complaints alleging employment discrimination.[4] Under the ADA, "discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome." Ahrens v. Perot Sys. Corp., 205 F.3d 831, 835 (5th Cir. 2000) (quoting Woodhouse v. Magnolia Hosp., 92 F.3d 248, 253 (5th Cir. 1996)). The Rehabilitation Act, however, at § 794(a) provides: "No otherwise qualified individual with a disability in the United States, as defined in § 705(20) of this title, shall, *solely by reason of* her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . ." Title 29 U.S.C. § 794(a) (emphasis added). It is clear that the jury charge stated above was a proper ADA charge. *See* Giles v. GE, 245 F.3d 474, 483 (5th Cir. 2001). Thus, the question is whether the 1992 amendments to the Rehabilitation Act require the use of ADA standards for causation, or the higher level of causation that § 794(a) seems to require.

The plain language of § 794(a) clearly requires the use of a

---

[4]"The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 . . . and the provisions of sections 501 through 504, and 510 of the ADA of 1990 . . . as such sections relate to employment." 29 U.S.C. § 794(d) (2000).

"solely because of" form of causation. In fact, before the 1992 amendments to the Rehabilitation Act, a panel of this court stated that under § 504 of the Act, which uses language identical to that of § 794(a), a "plaintiff must prove that he was discriminated against '*solely* by reason of' his handicap (or perceived handicap)."[5] Leckelt v. Bd. of Comm'rs of Hosp. Dist. No. 1, 909 F.2d 820, 825 (5th Cir. 1990) (emphasis in original). Further, in two cases since the amendment, we have stated that one of the elements of a Rehabilitation Act claim is that the discrimination occurred "solely by reason of" the disability. *See* Hileman v. City of Dallas, 115 F.3d 352, 353 (5th Cir. 1997); Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir.1993). Other circuits have interpreted the statute similarly. *See* Harris v. Adams, 873 F.2d 929, 932 (6th Cir. 1989); Norcross v. Snead, 755 F.2d 113, 117 n.5 (8th Cir. 1985) (stating that: "[i]t is significant that the section 504 plaintiff must show that handicap was the *sole* reason for the decision, while the Title VII plaintiff pursuing a disparate treatment claim need only show that a protected classification was a *factor* influencing the decision." (emphasis in original) (citations omitted); Doe v. New York Univ., 666 F.2d 761, 774-75 (2d Cir. 1981).

Soledad contends, however, that Congress intended its 1992

[5] We note that prior to the amendments in 1992, the statute referred to a "handicap" rather than a "disability" as is now the case after the amendment.

amendments to make the Rehabilitation Act conform to the ADA's standard for causation. In the conference committee report, Senator Harkin stated: "The conference report includes the Senate provisions incorporating the standards applied under the employment provisions of the Americans with Disabilities Act into the employment sections of title V of the Rehabilitation Act."[6] 138 Cong. Rec. S. 16608 (daily ed. Oct. 5, 1992). Soledad also points to the statement of Senator Kennedy that the amendments would "bring the Rehabilitation Act much closer to the philosophy of empowerment and independence that is espoused in the Americans with Disabilities Act." 138 Cong. Rec. S. 16613.

Soledad asserts that in Burns v. City of Columbus, 91 F.3d 836 (6th Cir. 1996), the Sixth Circuit adopted the "because of" causation of the ADA for Rehabilitation Act claims. Soledad appears to rely on the following statement by that court: "[b]y statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." Id. at 842. However, the direct reference was to the relative burdens of proof in a Rehabilitation Act case, and the Burns court determined that the ADA standards applied because of § 794(d). In fact, at the beginning of the paragraph containing the statement relied upon by Soledad, the court stated: "in cases in which the

---

[6] The report was unanimously adopted by the Senate and the House.

8

grantee states that it made the decision *because of* the handicap, the central factual dispute becomes whether the decision was made *solely because of* the handicap." Id. (emphasis in original). We conclude that the proper question to be asked in a Rehabilitation Act claim is whether the discrimination took place "solely because of" the disability.

A provision must be considered in its context and the more specific provision within a statute prevails. *See* In re Nobleman, 968 F.2d 483, 488 (5th Cir. 1992). The causation standard of § 794(a) requiring that the discrimination be "solely by reason of her or his disability," is clearly the more specific. Because Congress chose not to repeal the "solely by reason of" language of § 794(a) when it amended the statute,[7] we conclude that Congress did not intend to adopt the ADA standard of causation with the § 794(d) amendment. We therefore find no error in the district court's holding that it improperly instructed the jury that it could find liability if Soledad's disability was simply a "motivating factor." The instruction to the jury was clearly an error as a matter of law and very likely affected the outcome of

---

[7]After careful debate, Congress specifically chose to not use the term "solely" in drafting the ADA, an act that closely models the Rehabilitation Act. See H.R.Rep. No. 485(II), 101st Cong., 2nd Sess., at 85 (1990). The House Committee Report discussing the adoption of Title II of the ADA, specifically states: "The Committee recognizes that the phrasing of section 202 in this legislation differs from section 504 [of the Rehabilitation Act] by virtue of the fact that the phrase 'solely by reason of his or her handicap' has been deleted." Id.

9

the case.  Liability can only be found when the discrimination was "solely by reason of her or his disability," not when it is simply a "motivating factor."  The district court thus properly recognized its error.

   C.  Whether the District Court Properly Granted the Treasury Department's Motion for Judgment as a Matter of Law.

      1.  Rehabilitation Act

Soledad also appeals the district court's post trial order contending that he presented sufficient evidence to support the jury's verdict even under the "solely because of" causation standard.  Considering the evidence in a light most favorable to Soledad, we cannot find that a reasonable jury could not conclude that Soledad presented sufficient evidence to prove the Treasury Department discriminated against him "solely by reason of" his disability.  As this Court has said, if there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." Rutherford v. Harris County, Tex., 197 F.3d 173, 179 (5th Cir. 1999)(internal quotations omitted).  The jury returned a verdict in favor of Soledad concluding that he was discriminated against "because of" his disability.  The jury could also have made the further conclusion that he was discriminated "solely because of" his disability.  While we question whether the evidence was sufficient for a jury to conclude that Soledad was discriminated

10

against "solely because of" his disability, Appellees have not persuaded us that there was an absolute absence of evidence supporting the jury's finding. We therefore reverse the district court's grant of the Treasury Department's Rule 50 motion and remand for further proceedings consistent with this opinion.

2. Hostile Work Environment

Soledad also appeals the district court's grant of the Treasury Department's Rule 50 motion on his Rehabilitation Act hostile work environment claim, which was also based on the actions taken by Fuentes. The district court granted a Rule 50 motion after the jury had returned a verdict in favor of Soledad on his Rehabilitation Act hostile environment claim. The court stated that, even if the Fifth Circuit recognized such a claim, Soledad failed to show that Fuentes' conduct was sufficiently pervasive or severe to constitute a hostile work environment claim. This Court in Flowers v. Southern Regional Physician Services, Inc., 247 F.3d 229 (5th Cir. 2001), recognized a right to a disabilities based hostile work environment claim under the ADA. There we stated the requirements for a hostile work environment claim under the ADA:

> [T]o succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

Id. at 235.

11

While we believe that the elements of a Rehabilitation Act hostile work environment claim would be similar,[8] that issue was not raised below and, thus we do not reach it here. The district court correctly found that the acts complained of were not sufficiently pervasive or severe. As we said in Flowers, "the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" 247 F.3d at 236 (quoting McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998)). The record convinces us that the facts clearly demonstrate that Fuentes' acts were not sufficiently pervasive or severe.[9] We therefore find no error in the district court's grant of judgment as a matter of law on the Rehabilitation Act hostile work environment claim.

D. Whether the District Court Properly Granted the Treasury Department's Motion for Summary Judgment.

---

[8]While the Rehabilitation Act and the ADA are similar there are some differences. As discussed above, the Rehabilitation Act requires that the discrimination be "solely by reason of her or his disability." Therefore, we believe a proper hostile work environment claim based on the Rehabilitation Act would necessarily change the third element to read, "that the harassment complained of was based *solely* on her disability or disabilities."

[9]Cf. McConathy, 131 F.3d at 564 (stating "It is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense."); DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 594 (5th Cir. 1995) (ten offensive articles in police newspaper insufficient to support a hostile work environment claim).

Finally, Soledad appeals the district court's grant of summary judgment in favor of the Treasury Department on his Title VII retaliation claims. We review a motion for summary judgment de novo, affirming only where no genuine issues of material fact exist. Storebrand Ins. Co. U.K. v. Employers Ins. of Wausau, 139 F.3d 1052, 1055 (5th Cir. 1998).

The elements of a Title VII retaliation claim are: 1) the plaintiff participated in statutorily protected activity; 2) he received an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse action. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995). The district court held that Soledad failed to prove the second and third elements.

Soledad asserts that he presented facts sufficient for the second element. We find no error, however, in the district court's determination that the lateral transfer that Soledad complains of with no change in pay is not the type of ultimate employment action[10] necessary for an adverse employment action in a retaliation claim. *See* Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999). See also Serna v. City of San Antonio, 244 F.3d 479, 483 (5th Cir. 2001) (insufficient to show that a plaintiff has been transferred from a job that he likes to one he

---

[10]*See* Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995) (per curiam) (defining "ultimate employment actions").

13

does not like).

Furthermore, we also find no error in the district court's determination that Soledad failed to present evidence sufficient to create a question of material fact as to whether a causal connection existed between the protected activity and the adverse employment action. There was little evidence to show that Dhillon was even aware of Soledad's support of Gutierrez's claims and even less to show that he took certain actions because of Soledad's protected activity. Thus we find no error in the court's granting of summary judgment in favor of the Treasury Department on Soledad's Title VII retaliation claim.

### III. Conclusion

For the reasons assigned, we AFFIRM the grant of judgment as a matter of law on the hostile work environment claim and the grant of summary judgment. We REVERSE the grant of judgment as a matter of law on the sufficiency claim and remand for further proceedings consistent with this opinion.