**Rodney OSBORNE**

**v.**

**Suzanne ELMER, Jessie Blount, Art Norsworthy, Tim Lacombe, Joe Tate and the United States**

**No. CIV.A. 01–117–B–M1.**

United States District Court, M.D. Louisiana.

Aug. 5, 2004.

Kathryn W. Landry, Ieyoub & Landry, LLC, Baton Rouge, LA, for Plaintiff.

James L. Nelson, Catherine M. Maraist, Helina S. Dayries, Baton Rouge, LA, for Defendants.

### *RULING*

POLOZOLA, Chief Judge.

This matter is before the Court on the motions for summary judgment filed by defendants.[1] The motions are opposed.[2] The Court heard oral argument on July 28, 2004 and granted the motions for summary judgment for oral reasons assigned. The Court now supplements its oral reasons with these written reasons.[3]

The facts of this case have been set out in detail by the parties in both of their motions for summary judgment and are basically undisputed. The plaintiff, Rodney Osborne, has been employed with the United States Postal Service ("Postal Service") since 1993, and continues to work at the Postal Service today. On April 16, 1999, the plaintiff, who was then working as a Level 6 Mail Processing Equipment Mechanic, suffered an on-the-job injury to his shoulder and neck. Plaintiff's doctors placed certain work restrictions on him, and plaintiff was given a temporary limited duty assignment.

In June 1999, plaintiff's doctor ordered him to stop working. Plaintiff claims that he was discriminated against because of a letter that Suzanne Elmer wrote to him on June 11, 1999. The letter advised plaintiff that his Continuation of Pay ("COP") had terminated on June 2, and he would have to use sick or annual leave or leave without pay. This directive was in accordance with Postal Service policy.[4] In October and November, plaintiff exchanged additional correspondence with OWCP and submitted the CA–7 and CA–20 forms to receive worker's compensation benefits. In February 2000, plaintiff's time was posted in the Postal Source Data System as COP. The Postal Service claims that plaintiff owes it $921.78 in reimbursement for overpayment it made to the plaintiff when his COP was not in effect, but was still paid by the Postal Service.

The plaintiff was sent to Dr. Randall Lea for an independent medical examination ("IME"). After conducting an IME on May 25, 2000, Dr. Lea found that the plaintiff did have some permanent restrictions. After dealing with OWCP, plaintiff returned to work on September 20, 2000. On this day, plaintiff refused to sign a temporary limited duty assignment until discussing the matter with his attorney.[5] Thereafter, plaintiff signed the temporary limited duty assignment on September 21, 2000. On September 26, 2000 plaintiff met with defendants Suzanne Elmer and Art Norsworthy and was presented with the Level 7 position of Modified MPE. Plaintiff again refused to sign the job offer, and alleges that Norsworthy threatened the plaintiff with Absence Without Leave ("AWOL") if he did not sign the offer. Plaintiff later signed the offer, but alleges his modified position was more custodial in nature. Plaintiff contends that his being threatened with AWOL is an adverse employment action that supports his discrimination claim.

Plaintiff's final allegation of discrimination and retaliation arises out of his desire to be moved to a position more in line with his training and duties as an MPE Me-

---

1. Rec. Doc. Nos. 64 and 97.

2. Rec. Doc. Nos. 72 and 106.

3. In making its ruling, the Court has considered all of the contentions of the parties, including those made in briefs and on the record at oral argument, whether discussed during this opinion or during oral argument.

4. Suzanne Elmer was the Injury Compensation Specialist.

5. At oral argument, the parties agreed that plaintiff would not sign the document because it contained an error in the salary amount. The parties also agreed that the amount was corrected when plaintiff was presented with the document a second time.

chanic. On July 16, 2001, Scott Sulik, Manager of In–Plant Support, saw plaintiff performing custodial duties, and advised plaintiff that he needed help in his department for a short duration of time. The Postal Service contends that Sulik did not have any authority to offer plaintiff a position. Because plaintiff had a lawsuit pending, the Postal Service sought advice from its counsel before making a decision as to whether plaintiff could temporarily work for Sulik. The Postal Service contends plaintiff was never offered a full-time position by Sulik, and Sulik did not have any authority to offer plaintiff a position. By the time the Postal Service received the legal advice it requested regarding the Sulik matter, Sulik no longer needed help from the plaintiff. Thus, plaintiff did not work temporarily for Sulik. Plaintiff's counsel conceded during oral argument that plaintiff's retaliation claim was based only on this incident involving Scott Sulik.

Based on the allegations summarized above, plaintiff filed a complaint, and two amended complaints, against the Postal Service and various supervisory employees alleging race and disability discrimination and retaliation.[6] After defendants filed their first motion for summary judgment, the Court dismissed certain defendants, all of plaintiff's claims based on race, and all disability claims where the plaintiff had not complied with the administrative exhaustion requirements.[7] Thereafter, plaintiff exhausted all of his administrative remedies with respect to the disability claims, and the only issue now before the Court on both the first and supplemental motions for summary judgment is whether there are any genuine issues of material

fact with respect to plaintiff's disability discrimination and retaliation claims. Specifically, defendants contend that: (1) plaintiff's disability discrimination claims should be dismissed as a matter of law because plaintiff does not have a "disability" within the meaning of the Rehabilitation Act of 1973 and jurisprudence interpreting this Act; (2) plaintiff's disability discrimination claims should be dismissed as a matter of law because plaintiff has not suffered an adverse employment action within the meaning of the Rehabilitation Act; and (3) plaintiff's disability retaliation claim should be dismissed because the Postal Service's failure to transfer plaintiff to Scott Sulik's department did not constitute an adverse employment action.

Following oral argument, the Court granted defendants' motions for summary judgment. The Court finds that plaintiff's disability discrimination claims must be dismissed as a matter of law because plaintiff's condition does not meet, nor does it come within, the definition of "disability" under the Rehabilitation Act. The Court specifically finds that plaintiff's job related injuries do not make him a qualified individual with a disability under the Rehabilitation Act. The standards used to determine what constitutes a "disability" under the Americans With Disabilities Act ("ADA") are also used to determine whether an individual has a "disability" under the Rehabilitation Act.[8] Under the ADA, a "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[9] Having a disability

---

**6.** Because plaintiff is a federal employee, his claims for disability discrimination are governed by the Rehabilitation Act of 1973, 29 U.S.C. 701, *et seq.,* not the Americans With Disabilities Act.

**7.** Rec. Doc. No. 80.

**8.** *See Bridges v. City of Bossier,* 92 F.3d 329, 334, n. 7(5th Cir.1996), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997).

**9.** 42 U.S.C. § 12111(8).

under the Act means either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment.[10]

The United States Supreme Court recently set forth clear guidelines for determining whether a plaintiff was a "qualified individual with a disability" in *Toyota Motor Mfg., Kentucky, Inc. v. Williams.*[11] This case follows the trend of the Supreme Court's trilogy of cases, *Sutton v. United Air Lines,Inc.*[12] *Albertson's, Inc. v. Kirkingburg,*[13] and *Murphy v. United Parcel Service, Inc.*[14] in narrowing the scope of the ADA. In *Toyota*, the Supreme Court held that an employee claiming ADA violations must show that he or she is impaired in a variety of life activities, and not just in activities that are job-related. Essentially, an impairment that only affects an employee's performance of work tasks does not necessarily qualify as a disability under the ADA.[15] Thus, the Supreme Court set forth the following standard in *Toyota* for determining whether a person is qualified under the ADA:

> "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." [16]

Defendants contend that the strict standard set forth in *Toyota* entitles them to summary judgment on the disability discrimination claim because, by his own admission, plaintiff clearly stated that his injury does not prevent him from doing major life activities in his personal life.[17] In support of their motions for summary judgment, the defendants have produced evidence in the form of medical records, checklists completed by the plaintiff, and depositions that clearly show that plaintiff's personal daily activities have not been severely altered by his job related injury as is required by the *Toyota* court. Plaintiff argues that his inability to perform certain levels of tasks at work and his inability to perform certain tasks at his home, like mowing his lawn, qualify him as being disabled.[18] Plaintiff ignored the *Toyota* decision in opposing defendants' motion. By ignoring the *Toyota* decision, plaintiff also fails to understand the fact that the *Toyota* court declined to the find the plaintiff in that case to be disabled under the ADA just because she could not perform certain tasks at work or could not perform some manual tasks, like sweeping at home.[19] Plaintiff has also failed to pro-

**10.** 29 C.F.R. § 1630.2(g).

**11.** 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

**12.** 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

**13.** 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

**14.** 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

**15.** 122 S.Ct. at 693. The Supreme Court recognized in *Toyota* that the plaintiff was limited in performing her work because of her alleged disability. However the Court also found that her ability to perform personal matters meant that she was not substantially limited, as was required by the ADA. *Id.* at 694.

**16.** *Id.* at 693.

**17.** Rec. Doc. No. 68 at 28–29.

**18.** Rec. Doc. No. 72 at 4–6.

**19.** 122 S.Ct. at 694.

duce evidence to show that his condition falls within the definition of "disability" under the *Toyota* case. Accordingly, defendants are entitled to summary judgment on their disability discrimination claim.

■ In the alternative, the Court finds that plaintiff's disability discrimination claims must be dismissed as a matter of law because plaintiff has failed to prove that he has suffered an "adverse employment action" that would support his disability discrimination claims. In order to prove a prima facie case of disability discrimination, plaintiff must prove that he suffered an adverse employment action at the hands of the Postal Service.[20] In the Fifth Circuit, only "ultimate employment decisions," such as hiring, firing, discharging, or promoting meet the standard of an adverse employment action.[21] To qualify as an adverse employment action, the decision must effect a material change in the terms or conditions of employment.[22]

■ Defendants contend that plaintiff failed to prove that he suffered an adverse employment action while employed at the Postal Service. The Court agrees with defendants' argument that summary judgment on the disability discrimination claims should be granted. Defendants argue and the Court agrees that placing plaintiff on COP was not an adverse employment action because it qualified plaintiff to receive his regular salary and actually resulted in plaintiff being overpaid. Defendants further argue that the alleged AWOL threat by Art Norsworthy was not an adverse employment action because the undisputed facts show it did not even happen. Even if the threat did happen, as plaintiff alleges, defendants contend the threat did not constitute an adverse employment action because, under Fifth Circuit jurisprudence, the verbal threat of being fired is not an adverse employment action. Finally, defendants contend that the failure to offer plaintiff a job in Scott Sulik's department did not constitute an adverse employment action because there never was a job offer or permanent job available. It is clear that Sulik only needed temporary help. Even if Sulik had the authority to offer plaintiff a job, defendants argue, and the Court agrees, that the offer would have constituted a lateral transfer. It is well settled that the denial of a lateral transfer does not constitute an adverse employment action under Fifth Circuit jurisprudence.[23]

■ During oral argument and in his brief, plaintiff agreed that each of the above actions taken separately do not constitute an adverse employment action. Instead, plaintiff argues that defendants' motion for summary judgment should be denied because these actions when combined constitute a campaign of continual retaliation, discrimination, and harassment under *Breaux v. City of Garland*,[24] *Sharp v. City of Houston*,[25] and *Colson v. Grohman*.[26] Plaintiff argues this pattern of practices by the Postal Service constitutes a constructive adverse employment action. Plaintiff's argument is without merit and

---

**20.** *Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 503–04 (5th Cir.2002). *See also Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 511 (5th Cir.2003), *cert. denied*, — U.S. —, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003).

**21.** *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997).

**22.** *Eugene v. Rumsfeld*, 168 F.Supp.2d 655, 671 (S.D.Tex.2001) (Crone, Mag. J.).

**23.** *Soledad*, 304 F.3d at 506–07.

**24.** 205 F.3d 150 (5th Cir.2000).

**25.** 164 F.3d 923 (5th Cir.1999).

**26.** 174 F.3d 498 (5th Cir.1999).

is not supported by the law and evidence applicable to this case.

■ The Court also finds that the *Breaux, Sharp,* and *Colson* decisions do not support plaintiff's request for the Court to deny defendants' motions for summary judgment. These decisions also failed to support plaintiff's contention that the Postal service engaged in a campaign of continual retaliation, discrimination, and harassment against plaintiff.[27] This Court also declines to apply the standard applicable to Section 1983 cases to a disability discrimination case when neither plaintiff,[28] nor this Court in its independent research, has been able to find one Fifth Circuit case that applies the constructive adverse employment action doctrine to an employment discrimination case.

In summary, plaintiff has failed to raise genuine issues of material fact as to whether he suffered an adverse employment action under Fifth Circuit jurisprudence. Plaintiff's counsel admits that none of the actions, standing alone, constitute an adverse employment action for disability discrimination purposes. If the facts standing alone cannot constitute an adverse employment action, considering these acts together cannot make them an adverse employment action. There are simply no acts to combine because none constitute an adverse employment action.

Because it is clear and undisputed that plaintiff did not suffer an adverse employment action at the hands of the Postal Service, plaintiff's disability discrimination claims must be dismissed.

■ Finally, the Court finds that plaintiff's disability retaliation claims must be dismissed as a matter of law because plaintiff failed to prove or create an issue of fact that he suffered an adverse employment action. As noted earlier, plaintiff's counsel conceded during oral argument that plaintiff's retaliation claim was only based on the incident involving Scott Sulik.[29] In order to prove a prima facie case of disability retaliation, plaintiff must prove that he suffered an adverse employment action.[30] The Court finds that this incident alone did not satisfy the adverse employment action requirement. The undisputed evidence in the record clearly shows that plaintiff was not offered a position in Scott Sulik's department. Even if there was a job offer made to plaintiff, the undisputed evidence shows that the offer constituted a lateral transfer. It is clear that the denial of a lateral transfer is not an adverse employment action under Fifth Circuit jurisprudence.[31] Thus, plaintiff's disability retaliation claims should be dismissed because plaintiff failed to satisfy the adverse employment action element of a prima facie case of retaliation.

27. The three cases relied on by plaintiff take place in the context of First Amendment/Section 1983 claims, and there is a broader standard for satisfying the adverse employment action standard in Section 1983 cases.

28. Plaintiff's counsel cited *Mylett v. City of Corpus Christi,* 97 Fed.Appx. 473, 2004 WL 962905 (5th Cir.2004) to the Court in support of applying the constructive adverse employment action doctrine to employment discrimination cases. The Court agrees that *Mylett* was a case involving Section 1983 and Title VII claims, but turns the parties attention to footnote 4 which said, in pertinent part, "[t]he definition of an adverse employment action

may be broader under [Section] 1983 than it is under Title VII."

29. Even if plaintiff had tried to base his retaliation claim on other alleged incidents, the Court could not consider these other events because the plaintiff only filed an EEOC retaliation claim based on the Scott Sulik incident. Notwithstanding this jurisdictional restraint, the Court has already found that none of the events plaintiff complained of satisfy the adverse employment action requirement.

30. *Soledad,* 304 F.3d at 506–07.

31. *Id.* at 507.

Therefore, for written and oral reasons assigned:

IT IS ORDERED that both of defendants' motions for summary judgment are GRANTED.

IT IS FURTHER ORDERED that plaintiff's case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that judgment be entered in favor of defendants.