# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50314

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2016

Lyle W. Cayce
Clerk

ROCHELLE FLYNN,

      Plaintiff - Appellant

v.

DISTINCTIVE HOME CARE, INCORPORATED, doing business as
Distinctive Healthcare Staffing, Incorporated,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this case, we must decide whether Section 504 of the Rehabilitation Act authorizes employment discrimination suits by independent contractors. We conclude that it does. We therefore vacate the district court's judgment in part and remand for further proceedings.

## I.

The parties do not dispute the facts essential to the resolution of this appeal. Plaintiff-Appellant Dr. Rochelle Flynn is a contract pediatrician. Spectrum Healthcare Resources, Inc. ("Spectrum") contracted with the United

No. 15-50314

States Air Force to provide medical services at the Lackland Air Force Base in San Antonio, Texas. Spectrum and Flynn entered into a contract whereby Flynn agreed to provide clinical pediatric services at the San Antonio Military Medical Center for twenty hours per week. The agreement explicitly provided that "[t]he relationship between [Spectrum] and [Flynn] would be that of independent contractor," such that Spectrum "w[ould] not control or have the right to exercise control over the manner or means in which" Flynn performed medical services at the base. Flynn subsequently assigned her rights under the contract to Skwids and Skwiggles Pediatrics, PLLC ("Skwids & Skwiggles"), a professional company managed by Flynn.

Spectrum's contract with the Government terminated in March 2013. Defendant-Appellee Distinctive Home Care, Inc., d/b/a Distinctive Healthcare Staffing, Inc. ("Distinctive") took over Spectrum's duties to provide medical services at Lackland. However, Distinctive "retained Spectrum as a subcontractor" on the government contract, such that "Spectrum continued to directly communicate with the independent contractors" providing medical services at the base, including Flynn.

Distinctive entered into a new contract with Skwids & Skwiggles in April 2013. Pursuant to the new agreement, Skwids & Skwiggles "agree[d] to provide a physician, specifically [Flynn], to perform clinical professional pediatric services" at the San Antonio facility "for at least 936 hours per year." Like the agreement between Flynn and Spectrum, the agreement between Skwids & Skwiggles and Distinctive explicitly provided that "[t]he relationship between [Distinctive] and [Skwids & Skwiggles]/[Flynn] shall be that of independent contractor," such that Distinctive "w[ould] not control or have the right to exercise control over the manner or means in which" Skwids & Skwiggles or Flynn performed medical services at the base.

2

No. 15-50314

On May 15, 2013, Flynn's psychologist diagnosed Flynn with Autism Spectrum Disorder-Mild ("ASD-M"), a condition formerly known as "Asperger's Syndrome." ASD-M is a psychological disorder characterized by significant difficulties in nonverbal communication and social interaction, as well as restricted and repetitive patterns of behavior and interests.

Around that same date, David Warner, the government officer responsible for overseeing Distinctive's contract with the Air Force, contacted Distinctive's president. Warner "raised several concerns with Dr. Flynn's performance, including several complaints from patients and co-workers, Dr. Flynn's failure to report to work on time and her failure to timely complete patient charts." Warner "stated that it was in the best interest of the Government if Dr. Flynn was removed from providing services" under Distinctive's contract with the Air Force.

On May 16, 2013, a Spectrum employee named Dr. Richard Takao informed Flynn that the clinic was concerned about her performance. In response, Flynn informed Takao that her psychologist had diagnosed her with ASD-M the previous day. Flynn believes that her condition "would explain many of the issues that were of concern to" Distinctive and Spectrum. No one at Distinctive or Spectrum knew that Flynn had ASD-M before May 16, 2013.

On or about May 30, 2013, Warner sent Distinctive an e-mail containing documentation that purportedly "substantiat[ed] the allegations of poor performance and patient complaints" against Flynn. Warner, "on behalf of the Government," again "directed that Dr. Flynn be removed from" her duties as an independent contractor.

Flynn, Spectrum, and Distinctive held a conference call on June 7, 2013, during which Flynn asked to be reinstated with accommodations. Distinctive and Spectrum discussed Flynn's requested accommodations with the Air Force. On June 28, 2013, the Government responded that it could not accommodate

No. 15-50314

Flynn's request. Spectrum and Distinctive therefore informed Flynn that they would not retain her as an independent contractor.

Flynn sued Spectrum and Distinctive for employment discrimination under the Rehabilitation Act.[1] She claims that Spectrum and Distinctive "discriminated against [her] on the basis of her disability, subjected [her] to a hostile work environment based on her disability, and denied her a reasonable accommodation."

The district court concluded that Flynn could not sue Spectrum or Distinctive for employment discrimination under the Rehabilitation Act because she was an independent contractor, not an employee. The court accordingly granted summary judgment in Spectrum and Distinctive's favor on Flynn's Rehabilitation Act claims.

Flynn now appeals. The AARP and Disability Rights Texas have filed a joint amicus brief in support of Flynn.

The parties jointly moved to dismiss the appeal as to Spectrum, and we granted that motion. Distinctive is therefore the only remaining appellee in this case.

II.

We review a district court's order granting summary judgment *de novo*.[2] "The court shall grant summary judgment if the movant shows that there is no

---

[1] Flynn also raised state law breach of contract claims against Distinctive and Spectrum. The district court granted summary judgment in Distinctive and Spectrum's favor on those claims. Flynn does not challenge that aspect of the district court's summary judgment order on appeal.

[2] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)).

No. 15-50314

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

## III.

This appeal concerns an issue of first impression in our Circuit: May an independent contractor who lacks an employer-employee relationship with the defendant sue that defendant for employment discrimination under Section 504 of the Rehabilitation Act? Our sister Circuits have split on that issue,[4] and the Supreme Court has not resolved the split.[5] We turn now to that question.

### A.

#### 1.

The Rehabilitation Act of 1973 "was the 'first major federal statute designed to protect the rights of the handicapped people of this country.'"[6] The

---

[3] FED. R. CIV. P. 56(a).

[4] *Compare Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 939 (9th Cir. 2009), *cert. denied*, 561 U.S. 1006 (2010) ("[T]he Rehabilitation Act covers discrimination claims by an independent contractor.") *with Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 345 (8th Cir. 2006) ("With respect to Dr. Wojewski's claims under . . . the Rehabilitation Act, we affirm the grant of summary judgment to the defendants because Dr. Wojewski was not an employee of the hospital.").

*See also Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 969-75 (10th Cir. 2002) (holding that the Rehabilitation Act does not incorporate the ADA's requirement that the employer have "fifteen or more employees"); *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) ("[I]ndividuals who are not employers under Title VII cannot be held personally liable for retaliation under the Rehabilitation Act."); *Cortes-Rivera v. Dep't of Corr. & Rehab of the Commonwealth of P.R.*, 626 F.3d 21, 26-27 (1st Cir. 2010) ("declin[ing] to address" whether the Rehabilitation Act permits an independent contractor to sue for employment discrimination because the plaintiff "neither preserved nor adequately presented" that issue in the district court or on appeal); LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 163.02 (2d ed. 2015) (explaining that "[c]ourts are not in agreement as to whether § 504" of the Rehabilitation Act "incorporat[es] the ADA's definition of 'employer'").

[5] *See Yuma Anesthesia Med. Servs. LLC v. Fleming*, 561 U.S. 1006 (2010) (denying certiorari in *Fleming*, 587 F.3d 938).

[6] *Fleming*, 587 F.3d at 940 (ellipsis omitted) (quoting *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990)).

current form of Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, provides in relevant part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.[7]

Thus, Section 504 "broadly prohibit[s] discrimination" – including employment discrimination – "against disabled persons in federally assisted programs or activities."[8]

2.

Because Section 504 of the Rehabilitation Act "bars discrimination only in programs that receive federal financial assistance," it does not broadly "protect[] the disabled from discrimination in the private sector."[9] To fill that gap, Congress enacted the Americans with Disabilities Act ("ADA") in 1990.

Title I is the subchapter of the ADA that prohibits employment discrimination.[10] Title I prohibits any "covered entity" from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[11] The term "covered entity" includes any

---

[7] 29 U.S.C. § 794(a).

[8] *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010). *See also Butler v. Thornburgh*, 900 F.2d 871, 874 (5th Cir. 1990) ("The Rehabilitation Act . . . prohibits . . . employment discrimination against handicapped persons.").

[9] Gary S. Gildin, *Dis-Qualified Immunity for Discrimination Against the Disabled*, 1999 U. ILL. L. REV. 897, 905 (1999).

[10] 42 U.S.C. §§ 12111-17.

[11] *Id*. § 12112(a).

No. 15-50314

"employer."[12] However, not every entity that hires employees counts as an "employer" within the meaning of Title I; Congress defined that term to exclude entities with fewer than fifteen employees;[13] the United States and corporations wholly owned by the United States;[14] Indian tribes;[15] and a limited subset of tax-exempt organizations.[16]

3.

Soon after Congress enacted the ADA, it became concerned about potential inconsistencies between the Rehabilitation Act and the ADA. The Senate Subcommittee on Disability Policy held a hearing at which numerous witnesses "testified repeatedly regarding the importance of the passage of the Americans with Disabilities Act and the need to include the philosophies embodied in the ADA in the Rehabilitation Act."[17] To assuage these concerns, Congress added subsection (d) to Section 504 of the Rehabilitation Act, which incorporated portions of the ADA by reference:

> The standards used to determine whether [Section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.[18]

As Senator Harkin, the sponsor of the Senate bill, explained,

---

[12] *Id.* § 12111(2). "Covered entity" also includes any "employment agency, labor organization, or joint labor-management committee." *Id.*

[13] *Id.* § 12111(5)(A).

[14] *Id.* § 12111(5)(B)(i).

[15] *Id.*

[16] *Id.* § 12111(5)(B)(ii).

[17] S. REP. NO. 102-357, at 7 (1992).

[18] 29 U.S.C. § 794(d).

No. 15-50314

Now those who are covered by title V of the Rehabilitation Act will know that these are the definitions of reasonable accommodation and discrimination that apply. They will also know that the standards governing preemployment inquiries and examinations, and inquiries of current employees apply. Incorporating the ADA standards into the Rehabilitation Act will assure that there will be consistent, equitable treatment for both individuals with disabilities and businesses under the two laws.[19]

B.

Although this Circuit has not directly addressed the issue, other federal circuit and district courts overwhelmingly agree that a plaintiff may only sue a defendant under Title I of the ADA if the plaintiff is an employee, rather than an independent contractor, of the defendant.[20] Flynn concedes she was an independent contractor, not an employee, of Distinctive. As a result, Flynn cannot sue Distinctive under Title I of the ADA.

Flynn instead sued Distinctive for employment discrimination under Section 504 of the Rehabilitation Act. Distinctive does not dispute that it receives federal financial assistance, so Distinctive is subject to suit under the Rehabilitation Act. The question, then, is whether Section 504(d) of the Rehabilitation Act incorporates Title I's prohibition on employment discrimination suits brought by independent contractors. If it does, then we must affirm the judgment in Distinctive's favor. If, by contrast, the

---

[19] *Schrader*, 296 F.3d at 974 (emphasis omitted) (quoting 138 Cong. Rec. S16611 (statement of Senator Harkin)).

[20] *Wojewski*, 450 F.3d at 342 (citing *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 489 (8th Cir. 2003)); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004) ("'[T]he . . . ADA only protect[s] 'employees' and not independent contractors." (citing *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998))); *Johnson v. City of Saline*, 151 F.3d 564, 567-69 (6th Cir. 1998); *Born v. Aberdeen Police Dep't*, Civil Action No. 13–2963 (JAP)(TJB), 2014 WL 2451289, at *3 (D.N.J. June 2, 2014); *Earl v. Clovis Unified Sch. Dist.*, No. 1:11–CV–01731–LJO–BAM, 2012 WL 5304738, at *5 (E.D. Cal. Oct. 25, 2012); *Edwards v. Creoks Mental Health Servs., Inc.*, 505 F. Supp. 2d 1080, 1088-89 (N.D. Okla. 2007); *Reith v. TXU Corp.*, No. 4:05CV33, 2006 WL 887413, at *3 (E.D. Tex. Apr. 4, 2006).

No. 15-50314

Rehabilitation Act does not incorporate this limitation, then Flynn's Rehabilitation Act claims may proceed even though she was not Distinctive's employee.

C.

For the following reasons, we conclude that Section 504(d) does not incorporate this limitation in Title I of the ADA.

We agree with the Ninth and Tenth Circuits that the Rehabilitation Act does not incorporate Title I's requirement that the defendant be the plaintiff's "employer" as that term is defined in the ADA.[21] Unlike Title I of the ADA, Section 504 of the Rehabilitation Act is not limited to the employment context. To reiterate, Title I prohibits discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[22] Section 504 of the Rehabilitation Act, by contrast, is far broader.[23] It prohibits discrimination "under *any program or activity* receiving Federal financial assistance,"[24] and "program or activity" is defined to include "*all of the operations* of . . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship."[25] Thus, based on the plain language of the statute, the Ninth Circuit reasoned that "the Rehabilitation

---

[21] *See Fleming*, 587 F.3d at 946 ("We hold that § 504 of the Rehabilitation Act is not limited to employers and employees as defined in Title I of the ADA."); *Schrader*, 296 F.3d at 969 ("In this appeal, we hold that § 504(d) of the Rehabilitation Act . . . does not incorporate the ADA definition of an 'employer' . . .").

[22] 42 U.S.C. § 12112(a).

[23] *Fleming*, 587 F.3d at 941-42.

*See also D.A. ex rel. Latasha A.*, 629 F.3d at 453 (stating that § 504 "broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities").

[24] 29 U.S.C. § 794(a) (emphasis added).

[25] *Id*. § 794(b) (emphasis added).

Act covers 'all of the operations' of covered entities, not only those related to employment."[26]

The Ninth and Tenth Circuits' conclusion that the Rehabilitation Act does not completely incorporate the terms of the ADA is consistent with our opinion in *Soledad v. United States Department of Treasury*, 304 F.3d 500 (5th Cir. 2002). In that case, we considered whether Section 504(d) of the Rehabilitation Act incorporates Title I's causation standard in employment discrimination cases. "Under the ADA, 'discrimination *need not be the sole reason* for the adverse employment decision'" as long as the discrimination "'actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome.'"[27] Section 504(a) of the Rehabilitation Act, by contrast, explicitly provides that discrimination is actionable only if it occurs "*solely by reason of*" the plaintiff's disability.[28]

We concluded in *Soledad* that Section 504(a)'s explicit sole causation language trumped the more general incorporation language in Section 504(d). "A provision must be considered in its context and the more specific provision within a statute prevails. The causation standard of [Section 504(a) of the Rehabilitation Act] requiring that the discrimination be 'solely by reason of her or his disability,' is clearly . . . more specific" than Section 504(d)'s more general language incorporating standards from Title I.[29] Thus, Section 504(d) does not incorporate standards from Title I that would conflict with the Rehabilitation Act's plain language.

---

[26] *Fleming*, 587 F.3d at 942 (quoting 29 U.S.C. § 794(b)). *Accord Schrader*, 296 F.3d at 972 (quoting *Johnson v. N.Y. Hosp.*, 897 F. Supp. 83, 86 (S.D.N.Y. 1995)).

[27] *Soledad v. U.S. Dep't of Treas.*, 304 F.3d 500, 503-04 (5th Cir. 2002) (emphasis added) (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835 (5th Cir. 2000)).

[28] 29 U.S.C. § 794(a) (emphasis added).

[29] *Soledad*, 304 F.3d at 505.

In this case, Section 504(a) contains explicit language specifically authorizing discrimination suits against "any program or activity receiving Federal financial assistance."[30] Importing Title I's requirement that the plaintiff and the defendant have an employee-employer relationship would therefore conflict with the plain language of the Rehabilitation Act, which broadly authorizes discrimination suits against a wide variety of entities, including non-employers. Thus, Section 504(d) does not incorporate this limitation.

We also agree with our sister Circuits that the language of Section 504(d) does not incorporate Title I in its entirety. Instead, Section 504(d) specifies that the ADA's "standards" are to be used "to determine whether [the Rehabilitation Act] has been violated."[31] The Rehabilitation Act "does not state . . . that the standards of the ADA are to be used to determine whether an employer is even subject to the Rehabilitation Act in the first instance."[32] We therefore agree with the Ninth and Tenth Circuits that the Rehabilitation Act adopts "only the substantive standards for determining *what* conduct violates the Rehabilitation Act, not the definition of *who* is covered" under the Rehabilitation Act.[33]

Because the Rehabilitation Act does not incorporate Title I's standards for determining which entities may be held liable for employment discrimination, it does not incorporate Title I's requirement that the defendant be the plaintiff's employer. Consequently, the fact that a plaintiff is an independent contractor of the defendant is not fatal to the plaintiff's Rehabilitation Act claim.

---

[30] 29 U.S.C. § 794(a).

[31] *Id*. § 794(d). *Accord Schrader*, 296 F.3d at 972 (quoting *N.Y. Hosp.*, 897 F. Supp. at 86).

[32] *Schrader*, 296 F.3d at 972 (quoting *N.Y. Hosp.*, 897 F. Supp. at 86).

[33] *Fleming*, 587 F.3d at 944 (emphasis in original) (quoting *Schrader*, 296 F.3d at 972).

No. 15-50314

D.

Distinctive raises several arguments in support of the district court's order dismissing it on the grounds that Flynn, as an independent contractor, cannot assert a claim under the Rehabilitation Act. We consider those arguments below.

1.

Distinctive relies on *Wojewski v. Rapid City Regional Hospital, Inc.*, 450 F.3d 338 (8th Cir. 2006), in which the Eighth Circuit ruled that the Rehabilitation Act does indeed incorporate Title I's bar on employment discrimination suits by independent contractors. However, with respect to our colleagues on the Eighth Circuit, we find the *Wojewski* decision unpersuasive.

The Eighth Circuit gave three reasons for its holding. First, the court reasoned that the ADA and the Rehabilitation Act are "similar in substance," such that "cases interpreting either are applicable and interchangeable."[34] Because "[t]he ADA requires an employee-employer relationship," the court ruled that the Rehabilitation Act does as well.[35] However, as we explained above, Section 504 of the Rehabilitation Act materially differs from Title I of the ADA because it "specifically defines the entities to which it applies, and does not address employers."[36] To reiterate, the Rehabilitation Act prohibits discrimination "under *any program or activity* receiving Federal financial assistance,"[37] where "program or activity" is defined to include "*all of the operations* of . . . an entire corporation, partnership, or other private

---

[34] 450 F.3d at 344 (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)).

[35] *Id.* at 345.

[36] *Fleming*, 587 F.3d at 946 (citing 29 U.S.C. §§ 705(20), 794(a)-(b)).

[37] 29 U.S.C. § 794(a) (emphasis added)

organization, or an entire sole proprietorship."[38] Title I and Section 504 do not cover the same entities, so the two statutes are not perfectly interchangeable.[39]

Second, the *Wojewski* court observed that, as of 2006, no other court had yet decided that "a non-employee can be a qualified individual under § 504" of the Rehabilitation Act.[40] Thus, "absent authority to the contrary," the court "construe[d] both" the ADA and the Rehabilitation Act "to apply to an employee-employer relationship" only.[41] Since 2006, however, the Ninth Circuit has squarely held that an independent contractor who lacks an employee-employer relationship with the defendant may nonetheless sue that defendant for employment discrimination under the Rehabilitation Act.[42]

Finally, the *Wojewski* court relied upon an earlier Eighth Circuit decision interpreting a regulation promulgated by the Department of Health and Human Services, which provides that the term "qualified handicapped person" means, "[w]ith respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question."[43] The court concluded that "the relevant portion of the regulations couches the scope of the Rehabilitation Act in terms of employment."[44] Respectfully, we fail to see how this definition of "qualified handicapped person" has any bearing on whether the Rehabilitation Act authorizes suits by independent contractors or the degree to which Section 504(d) incorporates Title I of the ADA.

---

[38] *Id.* § 794(b) (emphasis added).

[39] *Fleming*, 587 F.3d at 942 (quoting 29 U.S.C. § 794(b)). *Accord Schrader*, 296 F.3d at 972 (quoting *N.Y. Hosp.*, 897 F. Supp. at 86).

[40] 450 F.3d at 344.

[41] *Id.* at 345.

[42] *Fleming*, 587 F.3d at 939-46.

[43] 45 C.F.R. § 84.3(*l*)(1); *Wojewski*, 450 F.3d at 345 (citing *Beauford v. Father Flanagan's Boys' Home*, 831 F.3d 768, 771 (8th Cir. 1987)).

[44] *Wojewski*, 450 F.3d at 345.

No. 15-50314

Thus, we find the Ninth Circuit's opinion in *Fleming* more persuasive than the Eighth Circuit's opinion in *Wojewski*.[45]

### 2.

According to Distinctive, this Court's opinion in *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999) holds that "a plaintiff cannot bring a Section 504 employment discrimination claim against a defendant that is not the plaintiff's employer." Distinctive misunderstands our decision in that case. *Lollar* holds that a plaintiff may not sue her supervisor individually for employment discrimination under Section 504 of the Rehabilitation Act, *not* because the supervisor is not the plaintiff's employer, but rather because the individual supervisor *does not herself receive federal financial assistance*.[46] Distinctive does not dispute that it receives federal funds. Thus, our decision in *Lollar* does not bar Flynn's suit against Distinctive.

---

[45] Distinctive also asks us to follow the Sixth Circuit's decision in *Hiler v. Brown*, which holds that "individuals who are not employers under Title VII cannot be held personally liable for retaliation under the Rehabilitation Act." 177 F.3d at 546. *Hiler* did not involve an independent contractor, so it does not squarely address the issue before us. *See Fleming*, 587 F.3d at 946. Moreover, several Circuits have disapproved of *Hiler*. The Tenth Circuit criticized *Hiler* for "broadly stat[ing], without analysis, that '[t]he ADA, ADEA, and the Rehabilitation Act borrowed the definition of "employer" from Title VII.'" *Schrader*, 296 F.3d at 975 (quoting *Hiler*, 177 F.3d at 546 n.5). Likewise, per the Ninth Circuit: "Though *Hiler* states that the Rehabilitation Act borrowed the definition of employer from Title VII, § 504 specifically defines the entities to which it applies, and does not address employers." *Fleming*, 587 F.3d at 946 (citing 29 U.S.C. §§ 705(20), 794(a)-(b)). Thus, "*Hiler* does not speak to the issue in the case before us, and to the extent it does, we are not moved by its analysis." *Id.*

[46] 196 F.3d at 609 ("Here it is clear that [the state agency] – not [the plaintiff's supervisor] – is the program recipient of the federal financial assistance. Consequently, Lollar cannot sue [her supervisor], individually, under the [Rehabilitation] Act." (citations omitted)).

3.

Distinctive also cites our statement in *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) (en banc), that "[t]he ADA and the Rehabilitation Act generally are interpreted *in pari materia*."[47] That excerpt, at first blush, could suggest that the Rehabilitation Act incorporates Title I of the ADA in its entirety.

However, *Frame* does not hold that Section 504 of the Rehabilitation Act adopts Title I's limitation on employment discrimination suits by independent contractors. *Frame* was not an employment discrimination case at all; the plaintiffs in *Frame* were city residents with disabilities who were unable to use their motorized wheelchairs on the city's non-handicap-accessible sidewalks. Thus, the relevant question in *Frame* was the degree to which Section 504 of the Rehabilitation Act incorporates the provisions of Title *II* – not Title I – of the ADA in cases challenging "disability discrimination in the provision of public services."[48] *Frame* has no bearing on the issue before this panel.

In any event, even if "[t]he ADA and the Rehabilitation Act *generally* are interpreted *in pari materia*,"[49] that does not mean that the two statutes are *always* interpreted identically. As we explained above, we agree that the Rehabilitation Act generally adopts "the substantive standards for determining *what* conduct violates" Title I of the ADA.[50] We merely hold – as

---

[47] 657 F.3d at 223 (citing *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287-88, 289 n.76 (5th Cir. 2005) (en banc)).

[48] *Id.* at 223. *See also id.* at 231 ("Because we interpret Title *II* and § 504 of the Rehabilitation Act *in pari materia*, we hold that § 504 extends to such sidewalks as well." (emphasis added)).

Indeed, Title II does not apply in employment discrimination cases at all. *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015) ("Unlike Title I of the ADA, Title II does not create a cause of action for employment discrimination." (citations omitted)).

[49] *Frame*, 657 F.3d at 223 (emphasis added) (citing *Kemp*, 610 F.3d at 234-35; *Pace*, 403 F.3d at 287-88, 289 n.76).

[50] *Fleming*, 587 F.3d at 944 (emphasis in original) (quoting *Schrader*, 296 F.3d at 972).

our sister Circuits have held – that Section 504 does not incorporate "the definition of *who* is covered under" Title I.[51]

4.

Finally, the district court relied on our unpublished per curiam opinion in *Luna v. Roche*, 89 F. App'x 878 (5th Cir. 2004) when it granted summary judgment in Distinctive's favor. In that case, a former Air Force employee alleged that "the Air Force discriminated against him" in violation of Section 504 of the Rehabilitation Act "when it terminated his disability retirement benefits."[52] This Court ruled that the former employee "lacked standing to pursue his discrimination claims involving his terminated benefits" because he "was neither an employee of the Air Force, nor an applicant for employment with the Air Force, when his disability retirement benefits were terminated."[53] The Court stated, with no analysis or citation to authority, that employment discrimination claims under the Rehabilitation Act "require the existence of an employer-employee relationship."[54] To the extent *Luna* bears on the issue before this panel, we decline to follow it for the reasons described above.[55]

IV.

In sum, we conclude that Section 504 of the Rehabilitation Act permits employment discrimination suits by independent contractors. Flynn's

---

*But see Soledad*, 304 F.3d at 505 (holding that the Rehabilitation Act does not incorporate Title I's causation standard).

[51] *Fleming*, 587 F.3d at 944 (emphasis in original) (quoting *Schrader*, 296 F.3d at 972).

[52] 89 F. App'x at 880-81.

[53] *Id*. at 881.

[54] *Id*.

[55] *See* 5TH CIR. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent.").

discrimination, hostile work environment, and accommodation claims against Distinctive may therefore proceed to a merits determination.

Distinctive maintains that it is nonetheless entitled to summary judgment on the merits because "(1) Dr. Flynn did not establish her disability substantially limits one or more of her major life activities; (2) there is no evidence Dr. Flynn's contract was terminated solely because of her condition; and (3) the decision to terminate Dr. Flynn's contract was made by the Government, not [Distinctive]." However, the district court did not reach the merits or rule on those issues. The district court should have an opportunity to consider the merits in the first instance. We therefore vacate the judgment in part[56] and remand for further proceedings.

VACATED in part and REMANDED for further proceedings.

---

[56] We leave the judgment intact to the extent the district court granted summary judgment in Distinctive's favor on Flynn's state law breach of contract claims because Flynn did not appeal that aspect of the judgment. We also leave the judgment in Spectrum's favor intact because the parties have jointly dismissed Spectrum from this appeal.