United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 7, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30134

Summary Calendar
_____

RHONDA L. RYBURN

Plaintiff - Appellant

v.

JOHN E. POTTER

Defendant - Appellee

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:03-CV-275
_____

Before KING, Chief Judge, and WIENER and DEMOSS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Rhonda Ryburn appeals the district

court's summary-judgment dismissal of her claim that she was

discriminated and retaliated against with respect to promotion

opportunities on the basis of her race, sex, and disability in

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (2000), and the Rehabilitation Act of 1978, as amended, 29 U.S.C. § 794 (2000). For the following reasons, we AFFIRM.

## I. BACKGROUND

Rhonda Ryburn, a Caucasian female, began working for the Postal Service at the Remote Encoding Center ("REC") located in Baton Rouge, Louisiana, in 1996. After the REC closed, Ryburn moved to the General Mail Facility in August 2000. In accordance with ordinary practice, the Postal Service posted a vacancy announcement in January 2001 for a position as a Flat Sorter Machine Operator ("FSM operator"), and Ryburn bid on the position and began working as a Level 5 FSM operator on February 10, 2001, under her immediate supervisor Sean Fleury, an African-American male. Flat mail operations also involved the Video Coding System ("VCS"), the Automated Flat Sorter Machine ("AFSM") 100, and the Flat Sorter Machine ("FSM") 1000. Ryburn's primary job duties consisted of keying in the address information from the flat mail into the FSM 1000. Fleury implemented a seniority-based rotation system that assigned the FSM operators to work on the various machines depending on need and the number of employees that a particular machine could accommodate.

While working as an FSM operator, Ryburn decided that she wanted to become a supervisor. On March 8, 2001, the Postal

Service posted Vacancy Announcement No. 2001-16 for the Associate Supervisor Program ("ASP").[1] Ryburn applied to the ASP but received a letter on October 5, 2001, from Patti Stonicher, coordinator of the ASP for the Louisiana District, disqualifying her from suitability based upon deficiencies in her attendance, safety, and discipline records.[2] The letter indicated, however, that Ryburn had received qualifying scores on the business mathematics, reasoning, and writing tests, which would remain valid for two years from the date of testing.[3]

Despite this setback, Ryburn submitted a written request to Fleury on October 24, 2001, stating that she wanted to volunteer to work in the VCS room. In her deposition, Ryburn explained

---

[1] The Postal Service initiated the ASP in 1996 to offer employees an opportunity to become first-line operational supervisors. The primary purpose of the program is to attract, select, and train the best possible candidates for first-line operational supervisory positions.

[2] The review committee for Ms. Ryburn's application consisted of Stonicher (Caucasian female), Kelly Smith (Caucasian female), Joyce Banks (African-American female), and Ken Arceneaux (Caucasian male).

[3] If the ASP review committee disqualifies an applicant based upon established benchmarks and guidelines, the candidate can reapply for the program when the next vacancy announcement is posted. The following suitability benchmarks for attendance were used when Ryburn submitted her application: (1) no more than three unscheduled absences in the one-year period prior to date of posting; or (2) no more than three tardies in the one-year period prior to the date of posting; or (3) no more than forty hours of unscheduled non-Family Medical Leave Act ("FMLA") sick leave and/or leave without pay ("LWOP") in lieu of sick leave in the one-year period prior to the date of posting. The record demonstrates that Ryburn's attendance record during the relevant period fell short of these requirements.

that she pursued such training opportunities as a means to advance her career in the Postal Service. Because a training class had just taken place on the previous day, Ryburn was not able to receive VCS training until the next training session in March 2002. Meanwhile, in February 2002, Ryburn began working as a Small Parcel Bundle Sorter ("SPBS") under the supervision of Charles West.[4] About one month later, Ryburn successfully bid on a position to work on the AFSM 100 machine. The additional training improved Ryburn's chances to work as a 204(B) supervisor beginning in February 2002. Unlike a front-line supervisor who successfully completes the ASP, a 204(B) supervisor merely serves as a temporary replacement for an absent first-line supervisor and cannot be directly promoted to a permanent supervisor role.[5] Ryburn worked as a 204(B) supervisor on at least fifteen separate occasions between March and September 2002.

On October 17, 2002, Ryburn alleged that West had a "discussion" with her on the workroom floor in the presence of

---

[4]  Although the record is not entirely clear, Ryburn does not contend that Fleury ordered or even requested that she transfer to a different position within the Postal Service. Rather, the record seems to indicate that employees frequently bid for different positions when their supervisors post vacancy announcements, possibly because of a high rate of turnover or overlapping skill sets among the personnel.

[5]  The Postal Service maintains that no particular formal training is necessary to serve as a 204(B) supervisor. The record shows, however, that experience in the various sectors is one of the factors used to determine which employee will be selected to replace an absent front-line supervisor.

4

other craft employees concerning her work performance.  Although the precise nature of the interaction remains unclear from the record, Ryburn maintains that because it took place on the workroom floor, it was unprofessional and it unnecessarily belittled her in front of her colleagues.  Shortly thereafter, Ryburn filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging unfair treatment in the rotation system implemented by Fleury and wrongful retaliation as evidenced by the discipline on the workroom floor.

In November 2002, Ryburn suffered a left shoulder sprain from the repetitive activity associated with working on the SPBS machine.  Her physician restricted her from lifting activities in excess of twenty-five pounds and performing any fine manipulation, including keying entries on the sorter machines. The Postal Service accommodated these restrictions with a limited-duty assignment.

On April 8, 2003, Ryburn filed a complaint alleging that the Postal Service discriminated against her on the basis of race (Caucasian) and sex (female).  The complaint also asserted that the Postal Service unlawfully retaliated against Ryburn by failing to process her disability claims in a timely fashion and treating her unfairly after she filed the EEO complaints. Specifically, Ryburn alleged that she was subjected to an unfair rotation that gave junior employees more work opportunities and that she was denied "upward mobility" as a 204(B) supervisor.

5

The district court found that Ryburn failed to demonstrate that the Postal Service's legitimate nondiscriminatory reasons were pretexts for race, sex, or disability discrimination or retaliation.  Accordingly, the district court granted the Postal Service's motion for summary judgment and dismissed Ryburn's claims with prejudice on December 29, 2004.  Ryburn filed a timely appeal of this judgment.

## II. ANALYSIS

### A.   Standard of Review

We review the district court's grant of summary judgment de novo.  Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003).  We view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  Id.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Therefore, summary judgment is warranted when the non-moving party fails to establish facts supporting an essential element of his prima facie claim.  See Mason v. United Air Lines, Inc., 274 F.3d 314, 316 (5th Cir. 2001).

### B.   Ryburn's Discrimination Claims Under Title VII

The primary issue on appeal is whether the district court

6

erred in granting summary judgment to the Postal Service on Ryburn's complaints of race and sex discrimination.  Ryburn alleges that the denial of the opportunity to work as a 204(B) temporary supervisor constitutes an actionable "adverse employment action" under Title VII.  See 42 U.S.C. § 2000e-2(d) (2000) (prohibiting unlawful discrimination with respect to on-the-job training programs).  The crux of Ryburn's claim centers on the fact that she worked as a 204(B) supervisor on only fifteen separate occasions between February and September 2002, whereas three of her African-American co-workers each served in that capacity for more than 100 days during the same time period.  The district court focused on alleged differences in mail processing experience among the employees and a planned downsizing at the Postal Service to account for the disparity in 204(B) opportunities.  Finding no error in the district court's reasoning, we affirm.

The district court analyzed Ryburn's Title VII claims under the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.  In order to survive summary judgment in a Title VII lawsuit, the plaintiff must first establish a prima facie case of discrimination.  To do so, the plaintiff must produce evidence that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) others similarly situated were treated more favorably.  Id. at 802.

7

Although this evidentiary requirement is not particularly onerous under the burden-shifting framework,[6] the district court found that Ryburn failed to establish even a prima facie case of race or sex discrimination in the conduct of the Postal Service.

Ryburn's naked assertions that supervisor Sean Fleury implemented an unfair rotation scheme contradicts the available deposition testimony and employment records. Ryburn was classified as a Level 5 employee, meaning that she was trained to key address information from the flat mail on the FSM 1000. The FSM 1000, however, accommodated only six operators at any given time, which clearly exceeded the thirteen qualified operators already employed by the Postal Service when Ryburn began her position. Fleury implemented a seniority-based rotation scheme that assigned the FSM 1000 operators to work the AFSM 100 and the VCS room when there was no available space on the FSM 1000.

According to Ryburn, she should not have been rotated with part-time and Level 4 employees. She failed, however, to produce any evidence of how similarly situated Level 5 employees fared

---

[6] After the plaintiff presents a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory rationale for its action. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). If the plaintiff can demonstrate by substantial evidence that the proffered justification is mere pretext, then the case should survive summary judgment. Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999) ("Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient.").

any better under the rotation system.  See Wyvill v. United

Companies Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000)

(requiring "nearly identical circumstances" of employment to

support a claim of disparate treatment).  In order to satisfy her

prima facie burden, Ryburn needed to demonstrate how other Level

5 employees actually received preferential treatment under

Fleury's rotation system.  She has not done so.  Moreover,

Ryburn's arguments do not explain how the ostensibly lateral

transfer from one mail sorting machine to another constituted an

"adverse employment action."  See Hockman v. Westward

Communications, LLC, 407 F.3d 317, 331 (5th Cir. 2004) ("A purely

lateral transfer cannot constitute an adverse employment

action.").  A temporary shift from the FSM 1000 to the AFSM 100

or VCS room does not amount to an adverse employment action,

especially where, as here, the jobs entailed essentially the same

benefits, duties, and responsibilities as the old position.  Id.

We also find no merit in Ryburn's allegations concerning her

training and assignments to the VCS room.  The record clearly

demonstrates that her request for VCS training was accommodated

during the first available class in March 2002.[7]  Her lack of

---

[7]  An employer is not required to extend any special
treatment to avoid liability for discrimination.  See Deloach v.
Delchamps, Inc., 897 F.2d 815, 822 (5th Cir. 1990) (requiring
only neutral, as opposed to special, treatment in an age
discrimination lawsuit).  Thus, even though Ryburn was forced to
wait several months for VCS training, the Postal Service was not
legally obligated to schedule an earlier training session to more
quickly satisfy her request.

9

assignments to the VCS room was not because of any race or gender discrimination, but rather the result of her successful intervening bid for a position as an SPBS in February 2002. Although Ryburn was qualified to work within the VCS room after her training, her voluntary bid for a different position within the Postal Service precluded any possible discriminatory motive on the part of the defendant in the transfer. See, e.g., Stewart v. Bd. of Trs. of Kemper County Sch. Dist., 585 F.2d 1285, 1286 (5th Cir. 1978) (holding that a "voluntary transfer" within a school system cannot constitute the basis for Title VII violation).

Although Ryburn concedes that the only means of achieving a promotion to a first-line supervisor is through the ASP, she insists that denying her more opportunities as a 204(B) supervisor stifled her "upward mobility" in the Postal Service. The manifest inconsistency in this argument renders it unpersuasive. Additionally, the ASP coordinator Patricia Stonicher, also a Caucasian female, did not evince any discriminatory intent in her letter to Ryburn that clearly stated the valid reasons for her disqualification from the program on account of her attendance records. The objective suitability benchmarks for attendance were established before Ryburn applied for the program and were facially neutral in all relevant

10

respects.[8]  See Keelan v. Majesco Software, Inc., 407 F.3d 332, 342-43 (5th Cir. 2005) (holding that a neutrally applied policy requiring employees to work from the office and use a certain business method for staffing projects cannot support a prima facie case of discrimination under Title VII); Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 318 (5th Cir. 2004) (finding no actionable Title VII denial of promotion where appellants failed to meet posted requirements for the position).

We also note that Ryburn has not adduced any evidence to suggest that the employment standards for the ASP operated more harshly upon members of her protected class than other groups. See Chance v. Rice Univ., 989 F.2d 179, 180 (5th Cir. 1998) (noting that a prima facie case of disparate impact under Title VII requires the plaintiff to show that "facially neutral employment standards operated more harshly on one group than another") (quoting Johnson v. Uncle Ben's, Inc., 965 F.2d 1363, 1367 (5th Cir. 1992)).  The record does not indicate that other ASP candidates with similar attendance records to Ryburn received more favorable treatment.  Even assuming that Ryburn offered proof of unfair treatment to meet her prima facie burden, the

_____

[8]  Whereas more subjective qualification standards might raise some suspicion of pretextual determinations, objective bright-line attendance requirements that are applied in an even-handed fashion do not entail this danger.  See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 681 (5th Cir. 2001) (quoting Crawford v. Western Elec. Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980)).

11

established attendance requirements for acceptance to the ASP constitute a legitimate, nondiscriminatory reason for denying her application, which Ryburn has failed to rebut with any additional evidence. Thus, the Postal Service was entitled to summary judgment with respect to this claim as well.

Ryburn's evidence of disparate treatment regarding the number of opportunities she was given to work as a 204(B) supervisor similarly fails to establish a prima facie case of discrimination under Title VII. Her claim centers around the allegedly disproportionate number of hours that three African-American employees were permitted to work as 204(B) supervisors. Ryburn does not dispute, however, the fact that each employee receiving additional hours as a 204(B) supervisor had more mail processing experience than she did.[9] The district court reasonably inferred that such additional training and experience was taken into account when determining which employees should fill in for absent supervisors on any given occasion. See, e.g., Nichols v. Lewis Grocer, 138 F.3d 563, 570 (5th Cir. 1998) (finding no authority for the proposition that an applicant's actual and relevant field experience must be ignored when reviewing a candidate for promotion). Even if the disparity

---

[9] The Postal Service asserted that the three employees in question had respectively fourteen, six, and five years of mail processing work experience. Ryburn, on the other hand, had less than two years of mail processing experience when she began working as a 204(B) supervisor.

12

supported a prima facie case, the relevant differences in mail processing experience demonstrate that Ryburn was not similarly situated to these employees and deserving of identical treatment under the law.  See Wyvill, 212 F.3d at 305 (holding that "striking differences" between employees in an age-discrimination case adequately explained differential treatment).

With respect to the allegedly unprofessional discussion with her supervisor West on the workroom floor on October 17, 2002, Ryburn's complaints once again do not rise to the level of an actionable Title VII violation.  It is well settled that, absent any verifiable and immediate change in employment status, mere verbal reprimands cannot support a claim of discriminatory treatment.  See Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) ("[T]he verbal threat of being fired, the reprimand for not being at [one's] assigned station, a missed pay increase, and being placed on 'final warning', do not constitute 'adverse employment actions' because of their lack of consequence.").  Even if the workroom floor was not the most appropriate place for the discussion, this court will not lightly attribute discriminatory motives to a supervisor based on managerial style.  See Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A., 139 F.3d 532, 539 (5th Cir. 1998) (holding that a plaintiff must do more than demonstrate that he or she has a "rude or uncivil boss" to succeed in a harassment suit under Title VII).  Moreover, Ryburn has not alleged any other instances

13

of disciplinary action on the workroom floor to bolster her claims of unfair treatment.  See Hockman, 407 F.3d at 328 (noting that "isolated incidents (unless extremely serious)" will not amount to actionable discriminatory acts under Title VII) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation omitted)).  Therefore, the district court appropriately dismissed Ryburn's complaint in this respect as well.

**C.  Ryburn's Retaliation Claims Under the Rehabilitation Act**

Ryburn claims that the Postal Service unlawfully retaliated against her by delaying the processing of her disability claims after she filed her EEO complaints.  See 29 U.S.C. § 794(a) (2000) (prohibiting disability-based discrimination by the U.S. Postal Service).  Both parties acknowledge that Ryburn suffered a sprain to her left shoulder, which limited her ability to lift more than twenty-five pounds and perform fine manipulation, including, inter alia, the repetitive keying required on the various SPBS machines.  After the injury, the Postal Service accommodated her medical restrictions with a limited duty assignment.  Ryburn contends, however, that the Postal Service delayed her request for a particular chair recommended by her physician and did not lessen her repetitive work to the desired extent in retaliation for her past EEO complaints.  Finding no merit in these arguments after our de novo review of the record, we affirm the district court opinion dismissing these

14

allegations.

The Rehabilitation Act adopts the standards applied under Title I of the Americans with Disabilities Act of 1990 ("ADA") to determine whether there has been a violation of the Rehabilitation Act. 29 U.S.C. § 794(d). The ADA defines "disability" as, inter alia, "a physical or mental impairment that substantially limits one or more of [a person's] major life activities." 42 U.S.C. § 12102(2)(A) (2000). The major life activity involved in this case is the activity of working as a craft employee at the Post Office. A person is substantially limited with respect to the activity of working when that person is

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (2003); see also Sutton v. United Air Lines, 527 U.S. 471, 491 (1999) (citing regulations and explaining that the phrase "substantially limits" means, "at a minimum, that [a person is] unable to work in a broad class of jobs").

In granting the Postal Service's motion for summary judgment, the district court concluded that Ryburn could not show that the shoulder injury substantially limited a major life activity. We agree with that conclusion. In making this

15

determination, the district court correctly examined "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196 (2002) (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). In the instant matter, Ryburn's shoulder injury limited her ability only to perform heavy lifting and repetitive fine manipulation movements. Ryburn's testimony confirmed that she was not restricted from sitting, standing, walking, climbing, kneeling, bending, or stooping. Because these medical restrictions affect only a narrow range of jobs requiring fine manipulation and heavy lifting,[10] the district court correctly found that Ryburn was not substantially limited from the major life activity of working. See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1120 (5th Cir. 1998) (finding a heavy lifting restriction to be insufficient evidence of a substantial limitation on a major life activity).

We also find little support for the proposition that the record here reasonably suggests that Ryburn was "regarded as" disabled in a more general sense by her supervisors at the Postal

---

[10] Indeed, the record of Ryburn's testimony clearly indicates that the Postal Service accommodated her medical restrictions with a seated job sorting mail from a bin. It is clear that this substitute position did not entail the sort of heavy lifting and repetitive keying that Ryburn's rehabilitation program prohibited.

16

Service.[11]  Based upon the uncontroverted testimony in the record, the Postal Service made a genuine effort to transfer Ryburn to positions that would not further aggravate her shoulder injury.  Thus, the district court correctly found that Ryburn was not generally "regarded as" disabled and retaliated against on that basis.  See Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993) ("An employer's belief that an employee is unable to perform one task . . . does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general.").

The summary-judgment record reasonably supports at most an inference that Ryburn was regarded as unable to perform a relatively narrow range of tasks associated with the work of certain craft employees.  Ryburn has not presented any direct evidence to suggest that her shoulder conditions contributed to her exclusion from the ASP or impeded her from receiving assignments as a replacement 204(B) supervisor.  See Gowesky v.

---

[11]  For a plaintiff to successfully establish that she was "regarded as" disabled under 42 U.S.C. § 12102(2)(C), she must demonstrate that she:
  (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
  (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
  (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.
29 C.F.R. § 1630.2(l); see also Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).

17

Singing River Hosp. Sys., 321 F.3d 503, 508 (5th Cir. 2003) (rejecting a "regarded as" disability claim where the employer "never limited [the plaintiff's] job duties or hindered [the plaintiff's] return to the full range of duties").

Finally, even if Ryburn successfully established a prima facie case of retaliation in the untimely processing of her disability compensation claim after she filed EEO complaints, the Postal Service has asserted a legitimate, non-retaliatory explanation for the delay. Specifically, the record indicates that the disability claim was filed while West was in the midst of retiring, which might have caused some unforeseen administrative delays in processing such claims. Moreover, once the claim form was presented to the new supervisor, it was completed and signed immediately. Our independent review of the record amply supports the district court's reasonable inference that such an inadvertent delay under the circumstances cannot survive dismissal under the Rehabilitation Act. See Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 365-66 (5th Cir. 1995) (rejecting the argument that the Rehabilitation Act is broad enough to encompass "unknowing, negligent or benign handicap discrimination that produces a failure to make a reasonable accommodation"). Furthermore, the Postal Service met its burden of production under the McDonnell Douglas framework, leaving Ryburn with the ultimate burden of persuasion to carry her retaliation claim beyond the summary-judgment stage. Reeves

18

v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'") (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). Ryburn has offered nothing beyond her own subjective belief to suggest that this reason was pretextual. See Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 403 (5th Cir. 2001) (finding that plaintiff must produce "substantial evidence" of pretext to carry the ultimate burden of persuasion after the defendant produces legitimate, nondiscriminatory reasons for the challenged action); see also Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999) (noting that an employee's subjective belief of discrimination alone without more is not sufficient to survive a summary judgment motion).

Since Ryburn failed to demonstrate a genuine issue of fact concerning whether she was regarded as disabled in the major life activity of working, the district court correctly granted the Postal Service's motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

19