**Michael D. KURTH**

v.

**Alberto GONZALES in his official capacity as Attorney General of the United States, United States Department of Justice.**

No. 1:05–CV–472.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 3, 2007.

**876**

Russell Ray Smith, Fairchild Price Thomas & Haley, Nacogdoches, TX, for Michael D. Kurth.

Andrea Hedrick Parker, U.S. Attorney, Beaumont, TX, for Alberto Gonzales in his Official Capacity as Attorney General of the United States, United States Department of Justice.

### MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

In an earlier memorandum opinion, the court partially addressed defendant's motion to dismiss. *See* Docket No. 64. That opinion (referred to for convenience as *Kurth I*) considered asserted defenses that were appropriately analyzed under Federal Rule of Civil Procedure 12.[1] This second opinion now addresses that part of defendant's motion properly examined as a motion for summary judgment under prin-

ciples pertinent to Federal Rule of Civil Procedure 56. Specifically, this opinion considers and resolves the motion as it pertains to plaintiff's causes of action for discriminatory discharge, harassment/hostile work environment, and reprisal/retaliation, all asserted under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

### I. FACTUAL BACKGROUND; PROCEEDINGS

In *Kurth I*, the court summarized the alleged facts that underlie plaintiff's multiple claims. The court further recounted relevant proceedings to date. Those recitations, although not reprinted here, are incorporated verbatim by reference. For present purposes, however, it is important to recall that the plaintiff, Michael D. Kurth (Kurth), alleges that he suffers from a disability stemming from job-related severe emotional stress and depression.

### II. DEFENDANT'S MOTION

Defendant asserts he is entitled to judgment as a matter of law on each of the remaining Rehabilitation Act claims listed above (except retaliation[2]) because Kurth cannot raise a genuine issue of material fact as to whether he is in fact disabled, a prerequisite for all Rehabilitation Act causes of action. Alternatively, defendant moves for summary judgment because plaintiff's employer, the United States Bureau of Prisons (BOP), offered reasonable accommodations, all of which Kurth refused.

---

1. The court concluded that Kurth's claims under the Whistleblower Protection Act must be dismissed for lack of subject matter jurisdiction. Further, the court determined that defendant's motion to dismiss Kurth's Rehabilitation Act retaliation claims for lack of subject matter jurisdiction should be denied. Finally, the court concluded that Kurth's Rehabilitation Act claims based on constructive discharge, and also his Title VII claims, must

be dismissed for failure to state a claim upon which relief can be granted.

2. Defendant's only ground for dismissal of plaintiff's retaliation claim is a jurisdictional objection based on failure to exhaust administrative remedies. That argument was considered and rejected in *Kurth I*. For the sake of completeness, however, the court reexamines the retaliation claim in the summary judgment context. *See* Section V.C., infra.

### III. SUMMARY JUDGMENT STANDARDS

Standards for determining pretrial motions for summary judgment are well-settled, and are not disputed by the parties. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). An issue is *genuine* if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is *material* when it is relevant or necessary to the ultimate conclusion of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Summary judgment is proper after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The admissibility of evidence is subject to the same standards and rules that govern the admissibility of evidence at trial. *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 650 n. 3 (5th Cir.1992).[3] In evaluating parties' evidence, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Weighing parties' conflicting evidence is not appropriate at the summary judgment stage: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury* functions." *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505) (emphasis added). At the summary judgment stage, courts must not weigh the evidence and determine which party has the strongest argument; instead, courts must simply determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

### IV. PRINCIPLES OF ANALYSIS

The Rehabilitation Act of 1973 provides protection from discrimination based on disability to employees of the *federal* government, *federal* agencies, and programs receiving *federal* funds. The Americans with Disabilities Act (ADA), enacted seventeen years later, prohibits similar discrimination in the private sector.[4] Congress amended the Rehabilitation Act in 1998 to harmonize the standards for determining when a person is disabled. *See* 29 U.S.C. § 705(20)(B). Consequently, case law construing the definition of disabled under the ADA or the Rehabilitation Act can be applied to both statutes, as "the rights and remedies under both statutes are the same." *See Pace v. Bogalusa City*

---

3. Local court rules also govern consideration of motions for summary judgment. E.D. Tex. Local Rule CV–56(b) states:

 Any party opposing the motion should serve and file a response that includes in the text of the response or as an appendix thereto, a "Statement of Genuine Issues." The response should be supported by appropriate citations to proper summary judgment evidence as to which it is contended that a genuine issue of material fact exists. Proper summary judgment evidence should be attached to the response in accordance with the procedure contained in section (d) of this rule.

4. 42 U.S.C. § 12101 *et seq.*

*Sch. Bd.,* 403 F.3d 272, 277–78, 278 n. 76 (5th Cir.2005).

When confronted with motions for summary judgment in cases brought under federal statutes prohibiting discrimination in employment, courts apply a familiar analytical framework first articulated for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There, the court "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* framework is a three-part burden-shifting process as follows:

a. The plaintiff must establish a prima facie case of discrimination.

b. When the plaintiff succeeds, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action.

c. If the defendant offers such reason, the burden then shifts back to the plaintiff to show evidence that the proffered explanation by the employer is only a pretext, masking the true discriminatory intent.

The *McDonnell Douglas* burden-shifting analysis specifically applies to claims brought under the Rehabilitation Act. *See Handy v. Brownlee,* 118 Fed.Appx. 850, 854 & n. 3 (5th Cir.2004) (stating that although the Fifth Circuit has not applied the *McDonnell Douglas* framework in a published opinion, every other circuit except the First and Eleventh has, and the Fifth would in an appropriate case); *Ryburn v. Potter,* 155 Fed.Appx. 102, 111 (5th Cir.2005) (applying the burden shifting framework in a Rehabilitation Act case).[5]

## A. Disability under Rehabilitation Act

The Rehabilitation Act defines "disability" as a physical or mental impairment that substantially limits one or more major life activities. *See* 29 U.S.C. § 705(9)(B). A "person with a disability" is defined as any person who: 1) has a physical or mental impairment which substantially limits one or more of the person's major life activities, 2) has a record of such an impairment, or 3) is regarded as having such an impairment. *See* 29 U.S.C. § 705(20)(B). Thus, at a minimum, a Rehabilitation Act plaintiff must produce evidence of an impairment that *substantially limits* a *major life activity. See Toyota Motor Mfg. Kentucky, Inc. v. Williams,* 534 U.S. 184, 195–96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

United States Department of Health and Human Services regulations implementing the Rehabilitation Act[6] do not define the term "substantially limits." However, the Equal Employment Opportunity Commission (EEOC), which has jurisdiction in ADA proceedings, has a guideline definition for that identical term. The EEOC considers that a person is "substantially limited" when the person is either unable to perform a *major life activity* that an average person in the general population

---

**5.** The Fifth Circuit employs a "modified" *McDonnell Douglas* analysis when an employer's "mixed motives" are in issue. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 94, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Rachid v. Jack in the Box,* 376 F.3d 305, 312 (5th Cir. 2004). Under this modified test, plaintiff can prevail even if the employer can prove a legitimate non-discriminatory motive for the adverse employment decision if the plaintiff can establish that the proffered reason was only one reason for the adverse action. *Id.* at 312–13. The modified test is inapplicable here because Rehabilitation Act plaintiffs cannot recover under a mixed motive theory. *See* Section IV.B., infra.

**6.** 45 C.F.R. § 84.3.

can perform or is significantly restricted as to the condition, manner, or duration under which such person can perform a particular major life activity as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j).

When considering whether persons are substantially limited in a major life activity, courts consider the nature, severity, duration, and effects of their impairments. *See Curl v. United Supermarkets, Ltd.*, 179 Fed.Appx. 208, 209 n. 7 (5th Cir.2006), *citing* 29 C.F.R. § 1630.2(j)(2). The Supreme Court instructs that these statutory terms should be interpreted strictly, so as to create a "demanding standard" for disability. *See Toyota Motor*, 534 U.S. at 197, 122 S.Ct. 681.

### B. Sole Cause

Another common element of a prima facie Rehabilitation Act case is a showing that discrimination or other prohibited acts were based *solely* on an employee's disability. Unlike Title VII cases and ADA claims where plaintiffs can recover based on "mixed motives," the Rehabilitation Act requires that the discrimination be based *solely* on an employee's disability. 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability ... shall, *solely* by reason of her or his disability ... be subjected to discrimination"). The Fifth Circuit unequivocally holds that notwithstanding some statutory ambiguity (See note 6 below), section 794(a) governs Rehabilitation Act claims, and the higher level of causation established by this section is required. *See Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 504–05 (5th Cir. 2002).[7]

### V. APPLICATION AND ANALYSIS

### A. The Discriminatory Discharge Claim

■ Kurth claims that his emotional impairments substantially limit a major life activity, namely, his ability to work. To establish a prima facie case of discrimination prohibited by the Rehabilitation Act, Kurth must establish that: 1) he is an individual with a disability, 2) he was otherwise qualified for the position, 3) he worked for a program or activity that received federal financial assistance, and 4) he was adversely treated solely because of his disability. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993).

Defendant's motion challenges the sufficiency of plaintiff's proof on the first required element of a prima facie case, i.e., whether Kurth is "an individual with a disability" within the meaning of the Rehabilitation Act. More specifically, defendant argues that Kurth's evidence fails because it does not raise a genuine issue of material fact as to whether Kurth's alleged impairment *substantially limits* his ability to work. Defendant emphasizes that Kurth, at best, claims only that he cannot work with one individual supervisor, and that inability to work with one individual does not rise to the level of a disability.

Kurth's response raises no meaningful rebuttal to this specific point. Instead, Kurth sidesteps it by arguing that his impairment affects *other* major life activities, *viz.*, sleeping, eating, concentrating, and communicating. He contends that evidence shows that his impairments substantially limit *those* activities. As to these latter assertions, the defendant proffers no

---

7. Under ADA, discrimination need not be the sole reason for the adverse employment decision. *See Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835 (5th Cir.2000). The Rehabilitation Act states generally that the standards used in determining a violation of it are the same as under ADA. *See* 29 U.S.C. § 794(d). This creates some tension between sections 794(a) and 794(d) of the Rehabilitation Act.

rejoinder whatsoever. Thus, the parties' arguments on crucial points resemble two ships passing in the night, and therefore provide the court with sparse assistance.

■ Absent helpful briefing, the court must pause initially to consider whether all of the functions advocated by Kurth qualify as major life activities. The court's research reveals that existing jurisprudence does not clearly illuminate whether sleeping,[8] concentration[9] and communicating with others[10] constitute major life activities for Rehabilitation Act purposes. However, *working* and *eating* clearly are major life activities. *See Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475–76 n. 24 (5th Cir.2006); *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 (5th Cir.2003) ("[b]y any measure, eating is of central importance to daily life and the life process"); 29 C.F.R. § 1630.2(j)(3). Moreover, the weight of authority suggests that *sleeping* also qualifies. Consequently, the court's analysis may proceed, at least with respect to these activities which are now examined in turn.

## 1. *Working*

■ To be substantially limited in the major life activity of working, Kurth must be unable to work in a broad range or category of jobs. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). It is not enough for Kurth to be substantially limited in his ability to perform a single job or narrow range of jobs. *Id.* at 492, 119 S.Ct. 2139 ("[t]o be substantially limited in the major life activity of working, then, one must be precluded form more than one type of job, a specialized job, or a particular job of choice"). Moreover, the inability to work with one individual does not qualify as a disability. *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1276 (10th Cir.2005) ("the major life activity of working cannot be 'substantially impaired' if a plaintiff cannot work under a certain supervisor because of the stress and anxiety it causes"); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1060–61 (7th Cir.2000) (plaintiff could not demonstrate that she was substantially limited in working when her inability to work was due to

8. Several circuit courts have determined that sleeping is a major life activity. *See Boerst v. Gen. Mills Operations, Inc.*, No. 00–3281, 25 Fed.Appx. 403, 406 (6th Cir. Jan.15, 2002); *EEOC v. Sara Lee Corp.*, 237 F.3d 349 (4th Cir.2001); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir.1999); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635 (2d Cir.1998). The Fifth Circuit has not yet weighed in on the issue. *See Hollon v. La. Pac. Corp.*, No. Civ. A. 9:04–CV–183, 2005 WL 1398711, *6 (E.D.Tex. June 14, 2005) ("[s]leeping is not ... clearly defined as a 'major life activity,' although some circuits have interpreted it as one ... the Fifth Circuit has not").

9. Two circuit courts have held that concentration is not a major life activity. *See Boerst*, 2002 WL 59637 (6th Cir.2002) ("Sleeping and working are major life activities ... [c]oncentrating and maintaining stamina are not");

*Pack*, 166 F.3d at 1305 ("sleeping is a major life activity, concentration is not"). The Third Circuit, however, has recognized concentration as a major life activity. *See Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 569 (3d Cir.2002). The EEOC's Compliance Manual identifies "learning, thinking, concentrating, interacting with others, caring for oneself, speaking, performing manual tasks, working ... [and] sleeping" as major life activities. EEOC Guidance on Psychiatric Disabilities and the ADA, EEOC Compliance Manual No. 59 at E–2.

10. Kurth has not provided, and the court has not found, any authority supporting the proposition that communicating with others is a major life activity. There is some support for a broader major life activity of interacting with others. *See McAlindin*, 192 F.3d at 1234; *Jacques v. DiMarzio, Inc.*, 386 F.3d 192 (2d Cir.2004).

her inability to work under a particular supervisor).

■ Kurth claims only that he can't work under Prichard, and Kurth has not shown that he is unable to work with anyone other than Prichard. Indeed, his summary judgment evidence tends to show exactly the opposite. First, Kurth was willing to return to his old job with BOP so long as Prichard was not his supervisor. Second, Kurth and his counsel identified several other positions at the Beaumont complex that Kurth could fill. Third, Kurth's deposition testimony shows that he is not substantially limited in his ability to work, as he successfully owns and operates his own business and has done so for over five years since being terminated by BOP. (Kurth Dep. Ex. 14 at 28:13–24.)

Consequently, Kurth's evidence is insufficient to raise a genuine issue of material fact on whether he suffers from an impairment that substantially limits a major life activity of working.

### 2. Eating

Kurth's affidavit states that he "went from 215 pounds to 160 pounds in seven weeks." (Kurth EEO Aff. Ex. 33 at 7.) By deposition, Kurth testified that he "was throwing up involuntarily." (Kurth Dep. Ex. 14 at 112:4–5.) Treating physician, Dr. Rajen Desai, M.D. (Desai), observes that Kurth weighed 237 pounds when they first met in February 1999, and was down to 158 pounds only three months later in May of 1999. (Letter from Desai to Hearing Officer of 1/17/2000, Ex. 35 at 2.) Dr. James Buckingham, M.D. (Buckingham), another treating physician, states that Kurth had lost over sixty pounds, and "would spontaneously regurgitate after eating." (Buckingham Aff. Ex. 37 at 7.) Finally, Kurth's deposition testimony establishes that these eating problems are ongoing, in that he has gained and lost abnormally large amounts of weight several times over the last seven years. (Kurth Dep. Ex. 14 at 130:25–131:8.)

■ This evidence raises a genuine issue of material fact as to whether Kurth is substantially limited in the major life activity of eating. Most people, unless suffering from debilitating illness, do not involuntarily throw up after eating, or experience rapid, extreme and recurring weight loss or gain.

### 3. Sleeping

As observed earlier in note 8, the law in this circuit is unsettled as to whether sleeping constitutes a major life activity. However, the weight of authority from other circuits points toward sleeping being a major life activity, and assuming arguendo that it is, Kurth's evidence raises a genuine issue of material fact as to whether his impairment substantially limits his ability to sleep. Kurth's affidavit states that he is "unable to sleep more than thirty minutes at a time in spurts over the course of an evening." (Kurth EEO Aff. Ex. 33 at 7.) His deposition testimony is that he is "sleeping only sporadically, 15–minute bouts at a time" and that he suffered "nightmares that were hellish in nature." (Kurth Dep. Ex. 14 at 112:1–6). Kurth's physician, Dr. Desai, observed that Kurth exhibited "signs of extreme sleep depravation [sic]." (Letter from Desai to Hearing Officer of 1/17/2000 Ex. 35 at 2.)

■ No clear standards establish what is enough evidence to raise a genuine issue of material fact as to whether sleep is substantially impaired, but the above evidence undoubtedly does, considering the nature, severity, duration, and effects of the impairment. Common experience teaches that most people need seven to nine hours of sleep a night, preferably in long stretches. Constantly interrupted sleep with hellish nightmares certainly is not normal. Moreover, Kurth's sleeping

problems are ongoing, and objectively manifest themselves to his physician as extreme sleep deprivation.

#### 4. Sole Cause

The analysis so far results in conclusions that Kurth fails to raise a genuine issue of material fact as to whether his alleged impairment substantially limits a major life activity of working, but does raise such an issue regarding major life activities of eating and sleeping. Thus, as to these latter activities, defendant's motion cannot prevail with respect to the first element of a prima facie case.

■ The inquiry does not end, however, simply because plaintiff raises a genuine issue of material fact on *one* element of his prima facie case. To survive motions for summary judgment, plaintiffs must present evidence sufficient to prove *all* elements of a prima facie case. Here, the second and third prongs of a prima facie case are not in dispute. The fourth requirement—that Kurth show that he was adversely treated *solely* because of his disability—also is not contested by the defendant, but the court's independent review raises the issue.[11]

Kurth seeks to demonstrate that he was terminated only because of his *medical condition.* As evidence of BOP's motivations, Kurth points to the deposition testimony of Sylvia Ordoez (Ordoez), the Employee Services Manager at the complex. (Ordoez Dep. Ex. 16 at 6:22–25.) Ordoez admits that Kurth was terminated because Kurth and his doctors contended that he could not return to work with Prichard. (Ordoez Dep. Ex. 16 at 255:12–256:4.)

■ Viewing the evidence in the light most favorable to Kurth, it does not raise a genuine issue of material fact as to whether the *sole* cause of his termination was his disability. It is important to bear in mind, first, that the two terms—"medical condition" and "disability"—are not synonymous. Disability has a specific meaning under the Rehabilitation Act. Kurth argues that the BOP terminated him due to his emotional inability to perform his job, and that the only reason he was emotionally unable to perform his job was due to the presence of Prichard. This may be true, but it does not demonstrate that the sole reason Kurth was fired was due to his disability. As discussed earlier, his inability to work with Prichard is not a disability.[12]

### B. Hostile Work Environment/Harassment

■ This cause of action is separate and distinct from the discriminatory discharge claim discussed in the preceding section. Hostile work environment is a type of discrimination under the Rehabilitation Act. *See Soledad v. U.S. Dept. of Treasury,* 304 F.3d 500, 506 & n. 8 (5th Cir. 2002). The elements of a prima facie case of hostile working environment are that: 1) the employee belongs to a protected group, 2) the employee was subjected to

---

**11.** Courts may grant summary judgments *sua sponte,* so long as the losing party was on notice that he had to come forward with all of his evidence. *General Universal Sys., Inc. v. Lee,* 379 F.3d 131 (5th Cir.2004). Kurth devoted a section of his response to addressing the sole cause element. He provided evidence that he perceives as showing that the government's sole reason for terminating him was his disability, and he argues that any other reason offered by the government is purely pretextual. Thus, Kurth has presented his evidence on this issue.

**12.** Kurth's failure to present sole cause evidence constitutes an alternative ground for granting defendant's motion for summary judgment on plaintiff's claim that his discharge constituted unlawful discrimination based on inability to engage in a major life activity of working.

unwelcome harassment, 3) the harassment complained of was based *solely* on the employee's disability, 4) the harassment complained of affected a term, condition, or privilege of employment, and 5) the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Id.* As for the fourth element, disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment to qualify as affecting a term, condition or privilege of employment. *Id.*

Kurth alleges that Prichard and other managers at the BOP subjected him to harassment and disparate treatment, which resulted in a hostile work environment. Kurth alleges that Prichard contacted Kurth twice by written letters while Kurth was on leave. Kurth alleges that the BOP required him to visit other doctors, and more strictly scrutinized his leave requests. Additionally, Kurth cites BOP's attempts to have him return to work, the presence of a BOP employee at his worker's compensation hearing, and the denial of all of Kurth's transfer requests as evidence of harassment.

As an initial matter, the court fails to grasp how these alleged actions reflect a hostile work environment. Such a claim necessarily presupposes that there *be* a work environment. Here, all of the actions complained of occurred several months into Kurth's extended sick leave or uncompensated leave. Although Kurth technically remained an employee, he was never at work—substantially before, during, or after—the alleged harassment. In

short, there was no *de facto* work environment capable of being hostile.[13]

■ Second, Kurth's evidence fails to show harassment so pervasive and severe as to alter the conditions of his employment or create an abusive environment. Prichard's first letter—actually signed by a Mr. Montoya—simply and straightforwardly informed Kurth that his leave without pay status was revoked due to the denial of his worker's compensation claim.[14] Such letter understandably was unwelcomed from Kurth's standpoint, but nothing in it is remotely harassing. The second Prichard letter is a form letter directing Kurth to report for a physical examination in accordance with federal regulations. Nothing about this letter, or a similar form letter sent six weeks after the first and signed by a different BOP representative, is harassing. Both are forthright requests for second medical opinions. Again, Kurth may have found it obnoxious to attend appointments with additional doctors, but this simply does not rise to a level of pervasive and severe harassment.

As for the remaining harassment evidence (BOP requests that Kurth return to work, attending a worker's compensation hearing, denying transfer requests), Kurth makes no attempt to explain how these actions were pervasive and severe such as to *alter* the terms and conditions of his employment. If anything, they suggest just the opposite, i.e., BOP's efforts to *reinstate* Kurth's employment.

As with a discriminatory discharge claim, a hostile work environment or

---

**13.** The court understands that harassment occurring outside the physical workplace can form the basis of a hostile work environment claim. *See Dowd v. United Steelworkers of America, Local No. 286,* 253 F.3d 1093, 1102 (8th Cir.2001) ("[t]he offensive conduct does not necessarily have to transpire at the work-

place in order for a juror reasonably to conclude that it created a hostile working environment"). Here, however, Kurth was on extended leave, such that there was no existing work environment.

**14.** The denial of this claim was later reversed.

harassment claim under the Rehabilitation Act necessitates that the harassment was based *solely* on the employee's disability. *Soledad,* 304 F.3d at 506 n. 8. Even if Kurth's evidence satisfies all other elements of a prima facie case, it is silent on the element requiring proof that BOP's actions were based solely on his disability. Kurth provides no evidence as to the basis for BOP's actions, making only a conclusory statement in his brief that the harassment was based on his disability.

Consequently, this hostile work environment claim—like the discriminatory discharge claim—fails for lack of evidence establishing a genuine issue of a material fact on an essential element of a prima facie case.

## C. Retaliation or Reprisal

In *Kurth I,* the court concluded that Kurth exhausted administrative remedies, thereby satisfying jurisdictional prerequisites for bringing a retaliation claim under the Rehabilitation Act. Failure to exhaust administrative remedies is the only ground for dismissal asserted in defendant's motion to dismiss. However, since Kurth survived that challenge, it is now appropriate for the court to examine whether his evidence establishes a prima facie case.

 It is not necessary for Kurth to produce evidence sufficient to establish a genuine issue of material fact on *disability* to survive summary judgment on this claim. Here, the relevant inquiry centers on whether plaintiff engaged in *protected activity.* Therefore, to establish a prima facie case of retaliation under the Rehabilitation Act, an employee need only show that: 1) he engaged in a protected activity, 2) his employer took an adverse employment action against him, and 3) a causal connection existed between the adverse employment action and the protected activity. *See Calderon v. Potter,* 113 Fed. Appx. 586, 592 (5th Cir.2004).

 Kurth's summary judgment evidence raises a genuine issue of material fact as to all elements of a prima facie retaliation claim. First, Kurth engaged in statutorily protected activity when he and his counsel requested that the BOP make reasonable accommodations for what they perceived as Kurth's disability. *See Coons v. Sec'y of U.S. Dep't of Treasury,* 383 F.3d 879, 887 (9th Cir.2004) (holding the same in ADA case); *Wright v. CompUSA, Inc.,* 352 F.3d 472, 477–78 (1st Cir.2003); *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 191 (3d Cir.2003); *Haulbrook v. Michelin N. Am.,* 252 F.3d 696, 706 (4th Cir.2001); *Giles v. Gen. Elec. Co.,* No. 3–97–CV–2774, 1999 WL 202573, at *6 (N.D.Tex. April 6, 1999). Second, following these unsuccessful requests, the BOP elected to terminate Kurth's employment. Third, a reasonable jury could find a causal connection between Kurth's protected activities and the BOP's decision to discharge him, given that these activities were closely related in time. *See Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir.2001) (stating that close timing between an employee's protected activity and the adverse employment action can provide evidence sufficient to satisfy the causal connection for summary judgment purposes). A reasonable jury could also believe the testimony of William K. Meade (Meade) who states in his affidavit that Prichard "made it clear to me that by Mr. Kurth claiming a disability, that Mr. Kurth would be terminated." (Meade Aff. Ex. 42 at 4).

Kurth, therefore, raises a genuine issue of material fact as to whether his termination was in retaliation for his protected activities.

## VI. SUMMARY AND CONCLUSION

Plaintiff's evidence fails to raise a genuine issue of material fact as to whether his alleged mental or emotional impairment

substantially limits his ability to perform a major life activity of *working*. By his own admission, plaintiff establishes that the primary impediment to his working was inability to work with Mr. Prichard. Inability to work with one person is simply not a disability. However, plaintiff's evidence successfully raises genuine issues of material fact as to whether his alleged impairment substantially limits his ability to perform other major life activities, *eating* and *sleeping*. As to these activities, however, he fails to satisfy another essential element of a prima facie discriminatory discharge claim, *viz.*, that the adverse action (discharge) was based *solely* on his disability. Therefore, the court, acting *sua sponte*, will grant summary judgment to defendant on plaintiff's claim for discriminatory discharge.

Defendant's motion also will be granted as it pertains to plaintiff's claim for discrimination in the form of a hostile work environment. This cause of action—assuming *arguendo* that the alleged facts state a cognizable claim—also fails for lack of evidence sufficient to raise a genuine issue of material fact as to whether the harassment of which plaintiff complains was based solely on his disability.

Finally, defendant's motion will be denied as it pertains to plaintiff's claim for retaliation. Plaintiff sufficiently exhausted available administrative remedies, and presents evidence sufficient to establish genuine issues of material fact of each element of a prima facie case of retaliation.