# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11083

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2018

Lyle W. Cayce
Clerk

JACQUELINE D. STOKES,

> Plaintiff - Appellant

v.

KIRSTJEN M. NIELSEN, SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY,

> Defendant - Appellee

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-1178

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Jacqueline Stokes, an employee at the United States Department of
Homeland Security (DHS) with visual impairments, appeals the district court's
entry of summary judgment for DHS on her discrimination and retaliation
claims brought under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Because
we conclude that a reasonable jury could find that Stokes was denied a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 17-11083

reasonable accommodation and that her employer's proffered justification for giving her a failing annual performance review was mere pretext for retaliation, we vacate summary judgment on both claims and remand for further proceedings.

**I**

Jacqueline Stokes has been employed as an operations support specialist at the Department of Homeland Security (DHS) for eighteen years, primarily responsible for arranging employee travel. Stokes is visually impaired: she is blind in her right eye and has reduced vision in her left. Since at least 2007, DHS has provided multiple accommodations for her disability, including providing a workstation with natural lighting, special lightbulbs, multiple monitors, magnifying software, and magnifying equipment. This case concerns only Stokes's requests for, and DHS's failure to provide, meeting materials she is able to read.

In April 2014, Stokes emailed her supervisors to request that, if materials would be passed out or displayed at on-site meetings, they be distributed to her either in large font or in advance so that she could review them using her workstation magnification equipment. However, despite assurances from her supervisors that these accommodations would be provided and Stokes's subsequent follow-up reminders, she has never received the accessible meeting materials requested.

Stokes filed suit against DHS in April 2015, asserting that she was denied a reasonable accommodation and bringing other discrimination and retaliation claims under the Rehabilitation Act. In November 2015, Stokes received a failing performance review for the 2015 fiscal year: a 1.4 out of 5 "Unacceptable" rating. She had received a 3.8 "Exceeded Expectations" rating the prior fiscal year and an even higher "Achieved Excellence" rating the year before. As a result of this failing rating, Stokes did not receive a Within-Grade-

No. 17-11083

Increase in her pay.  In May 2016, Stokes filed an amended complaint asserting that this 2015 performance review was a retaliatory adverse employment action.  This amended complaint also listed additional meetings held since Stokes's initial complaint for which advance or large-font materials still had not been provided.

Following discovery, Stokes moved for partial summary judgment on her reasonable accommodation claim, and DHS moved for summary judgment on all of Stokes's claims.  The district court granted summary judgment for DHS and dismissed Stokes's claims.  Stokes timely appeals.

## II

A district court's grant of summary judgment is reviewed de novo.  *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).  Summary judgment is only appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When considering a motion for summary judgment, a court must make all reasonable factual inferences from the evidence in the light most favorable to the non-movant. *Feist*, 730 F.3d at 452.

## III

The substantive standards for employment discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*, apply equally to claims brought under the Rehabilitation Act, 29 U.S.C. § 701, *et seq. Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 426 (5th Cir. 2016) (citing 29 U.S.C. § 794(d)).  Disability discrimination under the Rehabilitation Act and the ADA includes an employer's failure to make reasonable accommodations, unless the employer can demonstrate that such an accommodation would impose an undue hardship.  *Feist*, 730 F.3d at 452 (citing 42 U.S.C. § 12112(b)(5)(A)).  To make out a failure-to-accommodate claim, a plaintiff must

demonstrate that she is (1) a qualified individual with a disability, (2) the disability is known to the employer, and (3) the employer failed to make a reasonable accommodation for the known disability. *Id.* Only the third prong is in dispute in this case.

The district court, in granting summary judgment for DHS, cited *Brumsfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013) and held that "[b]ecause a reasonable accommodation is only required when necessary to perform an essential function of the job, a reasonable trier of fact could not find that DHS failed to reasonably accommodate Stokes's disability." However, our circuit has explicitly rejected the requirement that requested modifications must be necessary to perform essential job functions to constitute a reasonable accommodation. *Feist*, 730 F.3d at 452–54 (holding that "the district court erred in requiring a nexus between the requested accommodation and the essential functions of [the employee's] position"). Though DHS claims on appeal that this mistaken statement of the law was immaterial to the district court's determination, it is clear that the district court relied upon this incorrect standard to assess whether Stokes's requested accommodation was reasonable.

The ADA's implementing regulations define reasonable accommodations as, *inter alia*: "Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(*o*)(1). EEOC Guidance further advises that a modification satisfies this reasonable accommodation requirement if it is "effective" at achieving this purpose. U.S. EQUAL EMP. OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT (2002).

No. 17-11083

Applying the correct legal standard and considering the evidence in the light most favorable to Stokes, a reasonable jury could find that the requested meeting materials were a reasonable accommodation.  DHS contends that Stokes can effectively participate in meetings by listening and requesting copies of the materials after, as she does for off-site meetings for which she has not requested this accommodation.  Stokes replies that her willingness to get by with these inferior alternatives off-site, when it would be more difficult for DHS to provide the requested materials, does not mean that they effectively accommodate her.  DHS's additional argument that the other accommodations it has provided render the requested materials unnecessary is even less persuasive.  As Stokes notes, she cannot use a handheld magnifying glass to better see a PowerPoint presentation at a group meeting, and her workstation magnification equipment can only help her view meeting materials if she has them in advance, as she has requested.

The district court further erred by relying on *Loulseged v. Akzo Nobel Inc.* to conclude that DHS was alternatively not liable because its failure to provide the requested meeting materials was caused by Stokes's failure to "engage in the interactive process." *See* 178 F.3d 731 (5th Cir 1999). *Loulseged* notes that, after an employee has requested an accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process [with the employee] . . . in order to craft a reasonable accommodation." *Id.* at 735 (quoting 29 C.F.R. § 1630.2(*o*)(3)) (first alteration in original).  Because "the interactive process requires the input of the employee as well as the employer . . . . an employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer." *Id.* (cleaned up).

The facts of *Loulseged*, however, are very different from the situation here.  The employee in *Loulseged*, after learning that a prior accommodation

5

would no longer be available, "did not respond in any way to this announcement, and did not raise the issue again." *Id.* at 733; *see also id.* at 737 (emphasizing employee's "refus[al] to interact" and "deafening silence" when her employer explained policy changes that affected her accommodations). Here, in contrast, Stokes offered evidence that she repeatedly requested the specific accommodation, was assured it would be provided, and then did not receive it on multiple occasions. A reasonable jury could certainly conclude that any "breakdown" of the interactive process was not caused by Stokes.

Accordingly, because genuine fact issues remain for the jury, we vacate the district court's entry of summary judgment on Stokes's discrimination claim and remand for further proceedings.

### IV

The district court further erred by granting DHS summary judgment on Stokes's retaliation claim. Stokes alleges that DHS retaliated against her for bringing a discrimination claim by giving her an "Unacceptable" annual performance review that prevented her from receiving a pay increase.[1] The district court, applying the modified *McDonnell Douglas Corp. v. Green* burden-shifting framework, determined that DHS met its burden of offering a legitimate, non-retaliatory reason: the negative descriptions of Stokes's work included in the performance review itself. *See* 411 U.S. 792 (1973). The district court then concluded that Stokes did not provide evidence that would permit a

---

[1] Stokes also argues that the district court erred by failing to consider whether DHS's failure to file paperwork in support of a promotion also constituted an adverse employment action. However, because she fails to brief on appeal why this omission by DHS should be considered an adverse employment action, she has forfeited this argument. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir 1993) (parties may not incorporate by reference arguments made to the district court, but must brief them fully on appeal).

reasonable jury to find that this proffered rationale was mere pretext for a retaliatory motive.  Specifically, the district court found that Stokes did not rebut the allegations of legitimate performance issues—mistakes in reviewing travel vouchers, deficits in technical proficiency, poor communication, and poor customer service—described in the "Unacceptable" performance review.

As Stokes contends, however, this characterization fails to draw all reasonable factual inferences in her favor.  Stokes admits that she acknowledged to her supervisors she may have made some mistakes.  But this does not mean she conceded that the performance review correctly characterized her work.  To the contrary, Stokes demonstrated below and on appeal that she proactively challenged the performance review's descriptions of her work.  She repeatedly asked her supervisors to provide the documentation they relied on to criticize her work performance, such as the allegedly incorrectly prepared travel vouchers and co-worker complaints.  She contemporaneously expressed in writing her skepticism that the negative assessments were truly based on any deficits in her work.  In addition to evidence that her prior performance reviews had consistently been high, Stokes also provided thirteen positive reviews from customers praising her work during the fiscal year in question.

Admittedly, Stokes's primary evidence rebutting her alleged poor performance is her own assertions that the descriptions in the performance review are incorrect.  In support of its own position, however, DHS similarly offers only the performance review itself and deposition testimony from the supervisor who prepared it stating that it is accurate.  Stokes was never provided the supporting documentation she repeatedly requested and, moreover, that documentation was not included in the summary judgment or appellate record.  Stokes also offers additional evidence challenging this supervisor's credibility and indicating his potential hostility towards her based

on her disability and requests for accommodations. She demonstrates, for instance, that he claimed she never informed him of her visual impairments even after she sent him multiple memos explaining her disability and requesting accommodations.

Because deciding whether to credit Stokes's assertions that the performance review is unsupported versus her supervisor's testimony that it is accurate is a question for the fact-finder, the district court erred in granting summary judgment on Stokes's retaliation claim.

**\*\*\***

For these reasons, we VACATE the district court's entry of summary judgment on Stokes's discrimination and retaliation claims under the Rehabilitation Act and REMAND for further proceedings consistent with this opinion.